## GOODMAN v YOUNGSTOWN (city) et

Ohio Appeals, 7th Dist, Mahoning Co

No 2387. Decided June 4, 1937

Clyde W. Osborne, Youngstown, for plaintiff-appellant.

Wm. E. Lewis, Assistant Director of Law, Youngstown, for defendants-appellees.

**OPINION**

By NICHOLS, J.

On January 28th, 1929, the Council of the City of Youngstown passed, as an emergency measure, Ordinance No. 32883 entitled "An Ordinance to Regulate and License Junk Dealers, Junk Gatherers and Second-Hand Stores."

Plaintiff-appellant brought his action in the Common Pleas Court of Mahoning County on behalf of himself and about twenty others, who are all engaged in the same line of business and who come under the definition of "junk dealers," alleging that the ordinance is null, void and of no effect because each and all of its provisions are unlawful, unconstitutional, unreasonable, oppressive, confiscatory, ambiguous, uncertain, discriminatory and impossible of performance, and praying that the defendants be restrained and enjoined from enforcing or attempting to enforce the ordinance, and particularly §§232-A, 241, 243 and 247 thereof, and from in any way molesting, arresting or interfering with plaintiff and others like situated and by virtue of the terms of the ordinance.

The city answered admitting the passage of the ordinance and that defendants propose to enforce the same and arrest those who fail to secure the license provided for therein; and denying all other material allegations of the petition.

Upon final hearing in the Common Pleas Court judgment and decree was entered for defendants. The cause is now in this court upon appeal of law and fact and is submitted upon the pleadings and an agreed statement of facts.

Section 232-A of the ordinance is as follows:

"(Junk Dealers defined). The term 'junk dealers,' as used in this chapter, means any person, firm, partnership, corporation or association of persons, who purchase, receive or store scrap, old iron or other materials, glass, paper, cordage, old rubber, junked automobiles, or other waste or discarded material, which may be prepared to be used again in some form. The license fee to be charged and paid by junk dealers, as defined in this chapter, shall be Fifty Dollars ($50.00) per year."

Section 236 of the ordinance provides that no such person, firm, partnership, corporation or association of persons shall deal with any minor or apprentice or with any person whatever between the hours of 9 o'clock at night and 7 o'clock in the morning.

Section 240 of the ordinance provides that no such person, etc., shall purchase from drunkards or thieves.

Section 241 of the ordinance imposes certain duties upon junk dealers, which, summarized, are as follows:

"(a) Display a sign of a certain type.

"(b) Keep a separate book, open to inspection to any member of the police force, which shall contain a full record of every purchase or exchange, a complete description thereof, the name of the person from whom purchased and received and the day and hour when such purchase was made.

"(c) Such articles shall be retained for at least thirty days, kept in an accessible place in the building where such articles are purchased or received and a tag attached to such articles.

"(d) Shall prepare and deliver each day to the Chief of Police of the city in which such business is carried on and before twelve o'clock noon, a record upon blank forms furnished by the city, giving a complete description of such purchases of the preceding day, etc."

Section 243 provides a fine of not exceeding $500.00 as penalty for violation of §§232 to 243 inclusive.

Section 244 of the ordinance provides that no person, firm, partnership, corporation or association of persons shall engage in the businesses defined in the ordinance without having first secured from the mayor a license and paying the license fee therefor.

Section 247 of the ordinance provides as penalty for violation of §244 a fine of not to exceed $50.00 for the first offense and a fine of not to exceed $100.00 and imprisonment in the county jail for not more than thirty days for the second offense, and that each day of operation without a license shall be construed as a separate offense.

Section 247-1 of the ordinance is as follows:

"That this ordinance is hereby declared to be an emergency measure, necessary for

the preservation of the public peace, health and safety, and shall take effect upon its passage and approval of the Mayor."

The ordinance was approved by the mayor January 29, 1929.

The questions raised in this court by appellant are as follows:

"(a) The ordinance is invalid by reason of the emergency clause;

"(b) The ordinance is invalid because of the inconsistency of penalties for the same breach of the ordinance;

"(c) The ordinance is discriminatory;

"(d) The ordinance and its terms and conditions are unreasonably and unnecessarily oppressive;

"(e) The ordinance is void because Council has exceeded its authority in the following respects, to-wit:

"1. It attempts to license, under an exercise of police power, a legitimate business, which does not require and does not receive regulation;

"2. By reason of the exorbitant fee and because the business does not receive or require regulation, such license fee is a tax and not a license."

Leaving the first of these questions for the present and taking up the others in the order named, we find there is no inconsistency of penalties for the same breach of the ordinance. As set forth above, §243 provides a fine of not exceeding $500.00 as penalty for violation of §§232 to 243 inclusive. No other penalty is fixed for violation of the particular sections named. §247 provides a different penalty for violation of §244 only. Under the ordinance a junk dealer, as defined therein, may comply with all of the requirements of the ordinance except the procuring of a license and paying the stipulated fee, in which event he would be liable only to the penalty provided in §247. On the other hand, a junk dealer may procure a license and pay the stipulated fee and thus be exempt from the penalty provided in §247, but such junk dealer may violate one or more of the provisions of §§232 to 243 inclusive and thus become liable for the penalty provided in §244. The ordinance is not inconsistent in thus specifically prescribing penalties for violation of particular sections thereof, nor do we find fault with the fact that a junk dealer, defined in the ordinance, may subject himself to liability to both these penalties.

By its terms the ordinance applies to every "person, firm, partnership, corporation or association of persons." We fail to see how this language could be discriminatory for the claimed reason that it does not apply to automobile dealers who have taken in old cars as part of the purchase price and for resale in the same or repaired condition, but does apply to purchasers of old cars who dismantle them and place the parts in stock for resale. The ordinance is dealing with those who are engaged in purchasing, receiving or storing "waste or discarded material," which may be prepared to be used again in some form. The automobile dealer who takes in an old car as part of the purchase price upon a new one is not purchasing waste or discarded material. A reasonable interpretation of the phrase "junked automobiles" contained in §232-A of the ordinance means such automobiles as have outlived their usefulness as automobiles and have entered the state of waste or discarded material.

If the automobile dealer engages in purchasing, receiving and storing such junked automobiles as have become mere waste or discarded material he thereby brings himself within the classification of junk dealers defined in §232-A, and the ordinance would apply to him as well as all other persons, firms, partnerships, corporations or association of persons defined as junk dealers in that section.

As early as March 31, 1864 (61 Ohio Laws 128), and from that time to the present, second hand stores and junk shops have been the subject of legislation for the protection of the public interests. §§6370 to 6373, GC, inclusive, are the existing statutes dealing with second-hand stores and junk shops. These sections were formerly §§4413 and 4414, Revised Statutes. The constitutionality of these sections was declared by the Supreme Court in the case of **Phillips v The State of Ohio, 77 Oh St 214.** The syllabus of the cited case is as follows:

"Secs 4413 and 4414, Revised Statutes, which require junk dealers and dealers in second-hand articles of any kind to put up a sign and keep a book containing a description of articles purchased and to retain such articles for at least thirty days before disposing of the same, etc., are a necessary and reasonable exercise of the police power and are therefore constitutional."

In the opinion, at page 217, Davis, J., states:

"The business of dealing in second hand articles and junk is one which is peculiarly liable to abuse; and, whether honestly conducted or not, experience has shown that stolen or lost property frequently finds its way to the junk dealer, through the agency of persons who have unlawfully appropriated it. In view of the fact that it frequently happens that individuals seeking to reclaim their property are suddenly stopped and forever baffled at the door of the junk dealers' shop, the requirements complained of here seem to us to be very fair and moderate."

From the above quoted language we can readily distinguish between the junk dealer defined in the ordinance of the city of Youngstown and the automobile dealer who buys or takes in trade used cars, although each is required to comply with the provisions of §§6310-3 to 6310-14, GC, providing for the execution of duplicate bills of sale and the filing thereof with the Clerk of Courts. If, as stated in the brief of counsel for appellant, the junk dealer dismantles the junked automobile and salvages such parts thereof as may be sold and used for the repair of other automobiles, it is readily seen that such dismantling destroys the identity of the automobile and that individuals seeking to reclaim their stolen property would indeed be forever stopped and baffled at the door of the junk dealer's shop; whereas, the used automobile reconditioned and sold by the legitimate automobile dealer retains its character and identity as before and is traced by the bill of sale to the possession of whomsoever may have obtained it. It would therefore appear that the legislation has a reasonable and legitimate purpose and is not discriminatory.

An examination of §§6370 and 6373, GC, indicates that these code provisions are almost identical with the provisions of the ordinance in question here in that both require the junk dealer or dealer in second-hand articles to place in or upon his shop or other place of business a sign, having his name and occupation legibly inscribed thereon, and keep a separate book, open to inspection by a member of a police force, or other officer or person, in which shall be written, in the English language, at the time of the purchase or exchange of such articles, a description thereof, the name, description and residence of the person from whom purchased and received, and the day and hour when such purchase or exchange was made; that every entry shall be numbered consecutively, commencing with number one; that such articles so purchased or exchanged shall be retained by the purchaser thereof, for at least thirty days before disposing of them, in an accessible place in the building where such articles are purchased or received; that a tag shall be attached to such articles in some visible or convenient place, with the number written thereon corresponding to the entry number on such book; that such purchaser shall prepare and deliver each day to the mayor of the city in which such business is carried on, before twelve o'clock noon, a legible and correct copy, written in English, from such book containing a description of each article purchased or received during the preceding day, the hour at which the purchase was made and a description of the person from whom it was purchased; that no such person shall purchase or receive any such article of a minor or apprentice, knowing or having reason to believe him to be such, or from any person between the hours of nine o'clock p. m. and seven o'clock a. m.

In the opinion in Phillips v The State, supra, the Supreme Court states these "requirements * * * seem to us to be very fair and moderate."

The further provision in the ordinance in question whereby such junk dealers are prohibited from purchasing or receiving any such articles from any intoxicated person, habitual drunkard or person known to be a thief or associate of thieves, does not, in our opinion, add any additional burden or unreasonable restriction upon junk dealers.

The case of Phillips v The State, supra, is followed and approved in the cases of Sanning v Cincinnati, 81 Oh St 142, 90 NE 125; and French v Toledo, 81 Oh St 162, 90 NE 160.

It is the conclusion of this court that the ordinance and its terms and conditions are not unreasonable and are not unnecessarily oppressive.

Upon the further claim that the license fee stipulated in the ordinance is exorbitant and excessive and constitutes a tax revenue in that it is in excess of an amount reasonably necessary to cover the cost of granting the license and of exercising proper police regulation, we find the record

silent as to the cost of issuing licenses or cost of inspection of the books of junk dealers ( cost of filing and tabulating the daily reports, etc.

If the fee charged for the license is largely in excess of the amount reasonably necessary to cover the cost of granting the license and of exercising proper police regulation, the fee is a tax and the ordinance would be invalid.

In the case of **Prudential Co-operative Realty Co. v City of Youngstown, 118 Oh St 204, 160 NE 695,** the court states in the opinion:

"Where the authority is lodged in the municipality to inspect and regulate, the further authority to charge a reasonable fee to cover the cost of inspection and regulation will be implied. The fee charged must not, however, be grossly out of proportion to the cost of inspection and regulation; otherwise it will operate as an excise tax, * * *. It is not to be expected that fees can be charged which will exactly balance the cost and expense, and a reasonable excess will not operate to invalidate the ordinance."

It necessarily follows that the burden was upon plaintiff to show by the evidence that the fee charged for the license was grossly in excess of the cost to the city of issuing the permit and the expense of inspection and regulation. There being no evidence before us on this subject, we are unable to find that the fee is excessive. The furnishing by the city of blank forms for making the daily reports, the filing and tabulation of these reports, and the inspection of the books of dealers require considerable bookkeeping and add to the necessary expense. If, as stated in the petition, there are but twenty junk dealers in the city of Youngstown, the total revenue from license fees would be but one thousand dollars per year, and it is not unreasonable to believe that this sum will no more than sufficiently cover the necessary expenses incident to the issuing of the licenses and the necessary inspection and regulation involved. The ordinance is presumed to be valid, and when its validity is challenged the burden is on the complaining party to establish its unconstitutionality. See the case of **City of Cincinnati v Criterion Advertising Co., 32 Oh Ap 472.**

It is the finding and decision of this court

that the ordinance in question is not invalid by reason of any of the points raised in subdivisions b, c, d and e, 1 and 2, set forth hereinabove.

We come now to consider the remaining question, that is whether the ordinance is invalid by reason of the fact that it was adopted as an emergency measure to become effective immediately upon its passage and approval by the mayor and without publication of notice of its passage as required upon adoption of ordinances other than emergency measures.

By the provisions of §§4227-2 and 4227-3, GC, any ordinance passed by the council of a municipal corporation shall be subject to the referendum and shall not go into effect until thirty days after it shall have been filed with the mayor of the city. Certain ordinances are excepted from the provision that they shall be subject to the referendum. These exceptions are set forth in §4227-3, GC, which, so far as applicable to the present situation, is as follows:

"* * * emergency ordinances or measures necessary for the immediate preservation of the public peace, health or safety of such municipal corporation, shall go into immediate effect. Such emergency ordinances or measures must, upon a yea and nay vote, receive the vote of two-thirds of all the members elected to the council * * *, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure."

If the prescribed procedure for enactment thereof is followed, such emergency ordinances are valid and go into effect immediately upon passage. The duty and responsibility of determining the emergency and the necessity that a measure go into effect immediately are confided to the legislative branch of government, being the council of the city of Youngstown in the case under consideration here. But it is seen that by the provisions of §4227-3, GC, certain conditions are necessary to the validity of such emergency ordinances; first, the ordinance must be necessary for the immediate preservation of the public peace, health or safety of such municipal corporation; second, such emergency ordinance must, upon a yea and nay vote, receive the vote of two thirds of all the members elected to the council; and third, the reasons for such necessity shall be set forth in one section of the ordinance.

Does the ordinance in question meet all of the above requirements?

It is not questioned that the ordinance received the vote of two-thirds of all the members elected to the council upon a yea and nay vote. The ordinance states the conclusion that it is necessary for the preservation of the public peace, health and safety, but the ordinance does not state that it is necessary for the "immediate" preservation of the public peace, health or safety in such municipal corporation. However, it may be assumed that the **immediate** necessity therefor may be implied from the provision that the ordinance is declared to be an emergency measure and that it shall take effect upon its passage and approval of the mayor. But we do not find any separate section of the ordinance which states the reasons for such necessity. The language of the statute specifically requires that the reasons for such necessity shall be set forth in one section of the ordinance. The mere statement that the ordinance is necessary for the preservation of the public peace, health and safety is but a conclusion of the council, without the statement of any reason therefor.

It is clear to this court that the ordinance has not been adopted pursuant to the requirements of §4227-3, GC, and is for that reason invalid, and the operation thereof must be enjoined for that reason alone.

All ordinances of a general nature are required, by the provisions of §4227, **GC,** to be published in a specified manner and are not to go into effect until the expiration of ten days after publication, an exception thereto being emergency ordinances adopted in strict compliance with the provisions of §4227-3, **GC.** It must be kept in mind that under the **Ohio Constitution, Article II,** the initiative and referendum powers are reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action, subject however to the provision that laws providing for tax levies, appropriations for the current expenses of the state government, and emergency laws necessary for the immediate preservation of the public peace, health or safety, shall go into immediate effect. But **§1d, Article II, Ohio Constitution,** expressly provides that the reasons for such necessity shall be set forth in one section of the law. Since

no effort was made to enforce this ordinance for several years after its adoption, it seems apparent that reasons were lacking as showing the necessity of the ordinance for the immediate preservation of the public peace, health or safety of the municipal corporation, and hence the omission to set forth any reason for such necessity in one section of the ordinance.

Since the ordinance in question did not set forth in one section thereof the reasons for the necessity of such ordinance, it follows that the ordinance was not properly adopted as an emergency measure and is invalid. A perpetual injunction is granted restraining and enjoining the defendants from enforcing the ordinance. An entry may be prepared accordingly.

ROBERTS and CARTER, JJ, concur.