WALSH, APPELLANT, *v.* CINCINNATI CITY COUNCIL, APPELLEE.

(No. C-77292—Decided October 14, 1977.)

*Messrs. Condit & Dressing,* for appellant.
*Mr. Thomas A. Luebbers* and *Mr. Ely M. T. Ryder,* for appellee.

SHANNON, P. J. On February 24, 1977, the Council of the city of Cincinnati enacted an ordinance changing the name of the Cincinnati Riverfront Stadium to "The Charles P. Taft Riverfront Stadium." The passage of the legislation was motivated apparently by the desire of the Council to create a monument of sorts in recognition of Mr. Taft's distinguished career as a servant of the public. It was enacted under a suspension of the rules and declared to be an emergency measure to take effect immediately.

On March 16, 1977, the plaintiff-appellant filed his complaint as a resident individually and on behalf of all electors of the city of Cincinnati seeking an order enjoining the city, temporarily and permanently, from implementing the ordinance and declaring it to be unconstitutional. The Court of Common Pleas of Hamilton County granted a temporary restraining order preventing the city from

proceeding with "the execution [of the ordinance], including the expenditure of funds in any way connected therewith."

In response, the city filed a motion to dismiss the complaint on the ground that it failed to state a claim upon which relief could be granted. This appeal derives from the order granting that motion, the singular assignment of error being that the court erred in so doing.

The thesis advanced by the appellant is that an ordinance which by its own terms is not to take effect immediately and which fails to state the reasons for its enactment as an emergency measure lacks validity as an emergency enactment and is unconstitutional.

The ordinance *sub judice* in pertinent part provides:

"Section 1. That the name of the sports stadium located on Cincinnati's riverfront between Race and Broadway Streets in downtown Cincinnati and currently known as the Cincinnati Riverfront Stadium is hereby changed, effective January 1, 1978, to the name of 'The Charles P. Taft Riverfront Stadium.'

"Section 2. This ordinance is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, safety and welfare and shall go into effect forthwith. The reason for the said emergency is the immediate necessity of implementing Section 1."

The essence of appellant's complaint is that in enacting the ordinance as it did, the Council of the city of Cincinnati deprived the citizens of that municipality of their constitutional right to a referendum vote. The city contends that the question whether the declaration of the Council that the ordinance was one necessary for the preservation of the public peace, health, safety and welfare is not a justiciable question.

The power of referendum is guaranteed by Section 1f, Article II, of the Ohio Constitution.[1]

---

[1]Section 1f of Article II of the Constitution reads:

"The initiative and referendum powers are hereby reserved to the

R. C. 731.29[2] and R .C. 731.30[3] provide the means by which the constitutional mandate is to be exercised.

The guarantee of referendum is one of the shibboleths of democracy. Hence, courts should be liberal in construing the rights of citizens to invoke the constitutional privilege of referendum because such right is an invaluable arm of the democratic process. 39 Ohio Jurisprudence 2d 87, Municipal Corporations, Section 346. Similarly, it has been observed that provisions for referendum (and initiative) are liberally construed to effectuate their purposes, to facilitate and not to hamper the exercise by the voters of their right. 42 American Jurisprudence 2d 653, Initiative and Referendum, Section 5.

The question in the case at bar which leaps first to our eyes is, indeed, whether an ordinance may be passed as an emergency measure to go into immediate effect when a substantive provision of the ordinance is delayed by the terms of the ordinance. Here, the ordinance passed on February 24, 1977, provided that the change of name of the stadium was to be effective on January 1, 1978, a date some 10 months later.

The Court of Appeals for Trumbull County in decid-

---

people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law."

[2]R. C. 731.29 in pertinent part states:

"Any ordinance or other measure passed by the legislative authority of a municipal corporation shall be subject to the referendum except as provided by section 731.30 of the Revised Code. No ordinance or other measure shall go into effect until thirty days after it is filed with the mayor of a city or passed by the legislative authority in a village, except as provided by such section."

[3]R. C. 731.30 in pertinent part reads:

"* * * [E]mergency ordinances or measures necesary for the immediate preservation of the public peace, health, or safety in such municipal corporation, shall go into immediate effect. Such emergency ordinances or measures must, upon a yea and nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure."

110

ing *State ex rel. Johns, v. Bruss* (1955), 99 Ohio App. 314, considered an ordinance of the city of Warren, re-establishing two captaincies in its police department, which was passed December 16, 1953, upon a declaration that it was an emergency measure, to "take effect not earlier than January 1, 1954."

That legislation was held not to be an emergency enactment for two reasons.

First, the provision representing the intent of the Council was incompatible with the effective date of the emergency ordinance. The terms of the ordinance making it effective sixteen days after its passage prevented it from taking effect immediately and it could not have been, therefore, an emergency ordinance despite the bald statement that it was "necessary to pass [the] ordinance immediately and for the preservation of the public peace, health and safety * * * ."

Second, the Court of Appeals held, at page 317, that R. C. 731.30 requires that an emergency ordinance must state the reasons for such necessity in one of its sections and reiterated an earlier determination that the mere statement that an "ordinance is necessary for the preservation of the public peace, health and safety is but a conclusion of the council without the statement of any reason therefor."[4]

Although we find merit in both of these conclusions and think the rationale in *Bruss, supra,* to be apposite to the case before us, our own research has made us aware that the first of these two holdings by the court in *Bruss* has been implicitly modified by the Supreme Court of Ohio in *State, ex rel. Lipovsky, v. Kizak* (1968), 15 Ohio St. 2d 27. In *Kizak,* an emergency ordinance passed by the village of Twinsburg was to become effective twenty days after its passage. The court reflecting upon the meaning of the word "immediate" as it is used in R. C. 731.30 held it not to be synonomous with "instant effect."

The *Kizak* court, moreover, found "immediate" to

---

[4]See, *Goodman* v. *Youngstown* (1937), 24 Ohio Law Abs. 696 at 702.

connote effectiveness within a reasonable time, considering all the facts and circumstances. From the facts and circumstances apparent there, the court stated that "[t]he elapse of 20 days from the passage of the ordinance and its operative effect was not an unreasonable length of time and doubtless was necessary to set up the machinery and facilities to enforce the * * * provisions of the ordinance and to allow those affected to prepare for [its effect]."[5]

We are further obliged to decide this case within the ambit of *City of Youngstown* v. *Aiello* (1951), 156 Ohio St. 32, wherein, at page 36, the Supreme Court declared:

"This court has heretofore specifically held that where a legislative measure, passed either by the General Assembly of the state or by the council of a municipality, is declared to be an emergency measure necessary for the preservation of the public peace, health or safety and sets forth the reasons for the immediate necessity thereof, such determination is not reviewable by the courts, the duty and responsibility of such determination having been confided to the legislative branch of the government. *State, ex rel. Durbin,* v. *Smith, Secy. of State,* 102 Ohio St., 591, 133 N. E. 457; *Holcomb, Aud.,* v. *State, ex rel. Coxey,* 126 Ohio St. 496, 186 N. E. 99; *State, ex rel. Schorr,* v. *Kennedy, Secy. of State,* 132 Ohio St., 510, 9 N. E. (2d), 278, 110 A. L. R., 1428; and *State, ex rel. City of Fostoria,* v. *King,* 154 Ohio St. 213, 94 N. E. (2d), 697."

*Aiello* was cited with approval by the Supreme Court in *Kizak, supra.*

Clearly, then, this court cannot review the cogency of the reasons a legislative body gives for its declaration that an ordinance is an emergency measure. However, we do not read *Aiello* as constituting authority for a city council to declare an ordinance to be an emergency measure for reasons which are obviously illusory or tautological.

We take it that *Aiello* ought not to stand as license to call a fish a fowl, particularly where the reason given is that

---

[5]*State, ex rel. Lipovsky,* v. *Kizak* (1968), 15 Ohio St. 2d 27, 30.

it is necessary to do so. Here, if there was indeed an emergency, as that word has been defined in the *Kizak* case, the ordinance would have been framed to take effect within a reasonable period of time after its passage, considering all the facts and circumstances pertinent to the cause. Based upon the facts and circumstances of this cause as exhibited to us by the record, we find ten months to be an unreasonable period of time between the passage of the ordinance in question and its effective date. Moreover, the reason for the emergency, if such it was, could have been stated in terms readily understandable, and not as an arbitrary fiat.

We hold that the Council of the city of Cincinnati has failed to satisfy the requirements of law in enacting what purports to be an emergency ordinance because, by its terms, that ordinance failed to take effect "immediately" as that term is defined in *Kizak* and because the reason given for the necessity of its passage as an emergency measure was tautological and a conclusion without a fundament.

Resultantly, the ordinance lacks validity as an emergency enactment.

The effect of such determination is governed in part by the fourth paragraph of the syllabus of *City of Youngstown* v. *Aiello, supra.* That paragraph states:

"Where a purported emergency ordinance enacted by the council of a municipality does not comply with the mandatory provisions of Section 4227-3, General Code, and therefore does not go into immediate effect and no proceeding to institute a referendum or other *challenge* is made until after the expiration of the time limited for such attack, such ordinance takes effect in the same manner as other regular ordinances. (*Vansuch, Dir.,* v. *State, ex rel. Fetch,* 112 Ohio St., 688, approved and followed.)" (Emphasis ours.)

In the entry by which the court below journalized its order granting the defendant-appellee's motion to dismiss, it set forth its "conclusion of law" that the commencement of plaintiff-appellant's action constituted an "other

challenge * * * within the context * * * of *Youngstown* v. *Aiello*, 156 O. S. 32.''

We agree that the institution of the action attacking the manner in which the ordinance was passed and questioning its validity as an emergency measure constitutes a challenge to it sufficient to prevent it from taking effect in the same manner as other regular ordinances.

The appellant clearly could have attempted a referendum—beyond cavil an onerous task—but we take *Aiello, supra,* to recognize that a referendum is not the only choice available to one who seeks to challenge a disputed ordinance of the sort before us. The suit at bar served as a reasonably expeditious method by which to test the legality and constitutionality of the action of the council and, we hold, satisfies the requirements of *Aiello, supra,* and its precedents.

Clearly, one of the effects of our decision is that here the Council of the city of Cincinnati failed to negative the constitutional guarantee of referendum.

If, then, we were to hold that despite the invalidity of the ordinance as an emergency enactment the passage of time cured the defect, we would bar resort to referendum just as effectively as it would be barred if the action of the Council was to be permitted to stand.

We hold, accordingly, that in order to effectuate the purpose of Section 1f, Article II, of the Ohio Constitution, to guarantee to citizens the right to invoke their power of referendum, Ordinance No. 50-1977, passed February 24, 1977, by the Council of the city of Cincinnati, purporting to change the name of the Cincinnati Riverfront Stadium to ''The Charles P. Taft Riverfront Stadium'' is required to be and is hereby held to be unconstitutional and void.

The assignment of error, then, is well taken because the trial court for the reasons given did err in dismissing the complaint on the ground that it failed to state a claim for which relief could be granted. Consequently, the judgment of the Court of Common Pleas of Hamilton County is reversed, set aside and is to be held for naught.

We find further that in the posture in which this case presents itself the appellant, Joseph T. Walsh, individually and on behalf of all citizen electors of the city of Cincinnati, is entitled to have a judgment rendered in his favor as a matter of law and to have this court make that order which the court below should have made, pursuant to App. R. 12(B).

The judgment of the Court of Common Pleas of Hamilton County is reversed and it is adjudged that Ordinance No. 50-1977 of the city of Cincinnati is unconstitutional and void.

*Judgment reversed.*

PALMER and CASTLE, JJ., concur.