In this case, the majority finds the ordinance passed by the Village of Bellaire sufficiently stated the basis for the emergency in compliance with R.C. 731.30, thereby rendering it a valid emergency ordinance. However, its ultimate conclusion, that the ordinance complies with R.C.731.30 because "in effect [it states] it is an emergency because it is immediately necessary", demonstrates how the reason for the emergency given in the ordinance is conclusory in nature. Conclusory reasons fail to give the general public the information they need in order for them to make an informed decision at the ballot box, which is the purpose behind requiring municipalities to state the basis for the emergency within their emergency legislation. Because the language used in the ordinance to explain the basis for the emergency was merely a conclusion without a fundament and, thus, failed to state the emergency the ordinance was designed to correct, I must respectfully dissent from the majority's opinion. I would reverse the trial court's decision and grant judgment for the defendants.
Before addressing my substantive differences with the majority's legal analysis, I must first point out an important factual inaccuracy in the majority's opinion that affects its legal analysis. At the time the Village Council passed the ordinance, it had previously established a Board of Trustees of Public Affairs. In its rendition of the facts, the majority states the Village Council "decided to establish the position of Village Administrator to run day-to-day operations of the village in conjunction with a previously established Board of Trustees." This is inaccurate. As Section 7 of the ordinance makes clear, once either a Village Administrator or an Acting Village Administrator has been appointed, "the Board of Trustees of Public Affairs shall be abolished in accordance with Ohio Revised Code Section 735.272." This is because, pursuant to the plain language of R.C. 735.272, a Village Administrator and a Board of trustees of Public Affairs cannot exist at the same time. Within the statutory scheme found in R.C. Chapter 735, a village administrator and a board of trustees perform the same function for the municipality; they "manage, conduct, and control" the municipality's public utilities. R.C. 735.273; 735.29. There is no need, and no legal way, for the two to exist at the same time. Because the Village had established a Board of Trustees before it enacted the present ordinance, the Village already had a method of overseeing and controlling its utilities in place. As I will demonstrate, this misunderstanding of the facts of the case appears to be a large reason why the majority has reached its conclusion in this case.
As the majority points out, as a general rule, the residents of a municipality have the constitutional right to subject that municipality's ordinances to a referendum vote. Section 1f, Article II of the Ohio Constitution; Taylor v. London (2000), 88 Ohio St.3d 137, 143,723 N.E.2d 1089. However, if a municipality adopts emergency legislation in accordance with R.C. 731.30, then that emergency legislation is not subject to referendum. Taylor at paragraph two of the syllabus. Thus, when a municipal legislature declares an act an emergency measure, it effectively insulates the results of its decision from immediate and specific electoral scrutiny, the scrutiny normally guaranteed by Section 1f, Article II. State ex rel. Emrick v. Wasson (1990), 62 Ohio App.3d 498,503, 576 N.E.2d 814. In order to comply with R.C. 731.30, the emergency ordinance "must, upon a yea and nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and the reasons forsuch necessity shall be set forth in one section of the ordinance orother measure." (Emphasis added) Id.
A court's duty is not to review the municipality's determination of whether an emergency exists as the duty and responsibility for making that determination is vested solely in the municipal legislature.Jurcisin v. Cuyahoga Cty. Bd. of Elections (1988), 35 Ohio St.3d 137,519 N.E.2d 347, paragraph three of the syllabus; City of Youngstown v.Aiello (1951), 156 Ohio St. 32, 36, 45 O.O. 45, 100 N.E.2d 62; Emrick at 504. Instead, our duty is to review the adequacy and propriety of the enacting process to determine whether the municipal legislature has complied with the statutory framework allowing emergency municipal legislation. Aiello at 37; Cincinnati v. Hillenbrand (1921),103 Ohio St. 286, 133 N.E. 556. "[O]ur role is to secure conscientious compliance with the process mandated for enacting emergency measures. The focus of our examination is whether the municipal legislature complied fully with state law and the provisions of its own charter." Emrick at 504.
In conducting this review, courts must bear in mind the purpose behind R.C. 731.30's requirement that the emergency ordinance state the basis for the emergency in the ordinance itself. Because the enactment of an emergency ordinance insulates the measure from immediate and specific electoral scrutiny, if the voters do not agree with their representatives on either the existence of an emergency or the reasons for that emergency, then they have "an opportunity to take appropriate action in the subsequent election of their representatives." Taylor at 138, footnote 3, quoting State ex rel. Fostoria v. King (1950),154 Ohio St. 213, 221, 43 O.O. 1, 94 N.E.2d 697. Because a subsequent election is the only way the voters may express their disagreement with the enactment of emergency legislation with their elected representatives, strict compliance with R.C. 731.30 is required to ensure the general public receives the information which "may be highly pertinent in future decisions at the ballot box." Emrick at 504-505. Thus, the duty to set forth basis for the emergency within the ordinance itself is mandatory. State ex rel. Moore v. Abrams (1991),62 Ohio St.3d 130, 132-133, 580 N.E.2d 11.
Although courts may not review the legislature's determination of the existence of or the reasons for an emergency, this does not give municipal legislatures carte blanche to enact emergency measures with reasons that are conclusory, illusory, or tautological as reasons of these types do not meet the requirements of a valid ordinance under R.C.731.30. State ex rel. Waldick v. Williams (1995), 74 Ohio St.3d 192,195, 658 N.E.2d 241; Moore; Huebner v. Miles (1993), 92 Ohio App.3d 493,497, 636 N.E.2d 348; Walsh v. Cincinnati City Council (1977),54 Ohio App.2d 107, 111, 8 O.O.3d 208, 375 N.E.2d 811. As the majority correctly states, allowing a municipality to enact emergency legislation with these types of reasons frustrates the purpose behind requiring the legislation to state the basis of the emergency because it fails to provide the voters with the information they need when determining whether they should re-elect those representatives who enacted the emergency measure. As will be demonstrated, the majority's decision encourages municipalities to frustrate that purpose by finding a conclusory statement is sufficiently specific.
Forcing a municipality to state the basis for the emergency within the emergency legislation itself ensures the municipal legislature provides the general public with important information about the circumstances leading to the emergency measure. Emrick at 504. Only when such information is within the ordinance itself can we be sure the public as a whole, and not just those present at the meetings of the municipal legislature, knows why their elected representatives thought an emergency existed at the time the emergency measure was enacted. This is especially true when one takes into account that depriving the general public of this information effectively denies the voters of both the immediate scrutiny over the municipal legislature via referendum vote guaranteed by the Ohio Constitution and the scrutiny they may exercise through their ability to take subsequent action against their elected representatives.
Of course, merely making these statements of the law in relation to the validity of emergency ordinances under R.C. 731.30 in the abstract without contrasting and comparing this case to the existing body of case law, as the majority does in its opinion, does not give a complete picture of the state of the law. In order to receive guidance on how we should apply the law, this court should look to how both the Ohio Supreme Court and other appellate courts have applied these principles to various emergency ordinances that have been challenged.
In Waldick, the emergency ordinance in question stated the measure was an emergency because the city "must comply with the EPA imposed deadlines for the improvements to its water system." Id. at 195. The Ohio Supreme Court found this to be a "sufficiently specific" statement of the basis for the emergency under R.C. 731.30. Id. Similarly, in State ex rel.Pasqualone v. Bowlder (Aug. 21, 1998), 11th Dist. No. 98-A-0008, the emergency ordinance stated the reason for the emergency was so "the City of Geneva could eliminate unsafe conditions in the water system and respond to `pressing' legal matters." Id. at 6. The Eleventh District found this reason "was sufficient to inform the public of the basis for the Geneva City Council's decision" and that it satisfied the requirements of R.C. 731.30. Id. While it would be ideal for municipal legislatures to give specific reasons like those in Waldick andPasqualone, we are quick to point out a prolonged explanation of the reason is not necessary to comply with R.C. 731.30. Id. A court should not find the emergency ordinance fails to comply with R.C. 731.30 merely because the explanation provided by the municipal legislature is inarticulate. Moore at 133.
The ordinance in question in Moore exemplifies an inarticulate, but acceptable, explanation of the basis for the emergency. In Moore, the preamble of the emergency ordinance before the Ohio Supreme Court stated "that in order to proceed with the Portsmouth Downtown Improvement Program, this constitutes an emergency, requiring immediate action in that we are well into the 1990 construction season." Id. at 131-132. The court found this statement inarticulate, but not illusory or tautological. "The linkage of improvement and lateness of the construction season with the concept of emergency is not so vague as to fail to appraise the voters `that their representatives did have valid reasons for the necessity of declaring that the ordinance was an emergency.'" Id. at 133, quoting Fostoria, supra at 219.
As a final example of an emergency ordinance courts have found complies with R.C. 731.30, in Huebner the court also pointed out that, while the ordinance could have been more specific, it was sufficient to appraise the voters of the existence of valid reasons for the emergency. The ordinance in question stated an emergency existed because "the Village needs to raise additional revenue, so as to be able to continue to provide vital services to the Village residents." Id. at 498. This statement was sufficient because it informed voters that valid reasons existed for the necessity of declaring an emergency. Id. Thus, it met the requirements of R.C. 731.30.
Conversely, courts have found some municipal legislatures have failed to provide the necessary information to the general public within the emergency legislation. For example, in Walsh Section 1 of the ordinance in question renamed the sports stadium in Cincinnati from the "Cincinnati Riverfront Stadium" to the "Charles P. Taft Riverfront Stadium". According to the ordinance, the situation was an emergency because of "the immediate necessity of implementing Section 1." Id. at 108. In explaining and approving the First District's decision in Walsh, the Ohio Supreme Court stated the problem with that ordinance was "the sense of that emergency clause was that the renaming of the stadium was an emergency because it was an emergency." Moore at 133.
Other emergency clauses have been struck down for the same reason. For example, in Snyder v. City of Bowling Green (Dec. 13, 1996), 6th Dist. No. WD-96-036, the emergency language in the ordinance stated that "prompt effectiveness of zoning measures are [sic] necessary in order to provide appropriate zoning for the property in the City and thereby protect the public health, safety and well being of our citizens." Similarly, in Mlakar v. Koziura (Oct. 3, 1984), 9th Dist. No. 3617, the reason given in the ordinance for the emergency was the "immediate need" for the re-zoning provisions contained in the ordinance. The courts in both Snyder and Mlakar found the ordinances in question failed to comply with R.C. 731.30 because they failed to explain why the situation the ordinance was meant to address was an emergency. See also Emrick;Schuerger v. City of Lebanon (Oct. 14, 1981), 12th Dist. No. 391. These cases stand for the proposition that a municipal legislature cannot pass valid emergency legislation by making a "conclusion without a fundament". Schuerger at 1.
After examining how these cases applied the law to the facts, it can be seen that the crucial difference between the ordinances in Moore andHuebner and those in Walsh, Snyder, and Mlakar is that in the former cases the municipalities gave some reason to explain why it was necessary to declare an emergency. In the latter cases, the municipality merely stated the ordinance was necessary without providing an explanation. As Appellant's counsel correctly contended at oral argument, presumably every piece of legislation enacted by a municipal legislature is enacted because the legislature deemed to be necessary legislation. Thus, the statement that the ordinance is "necessary" could apply to virtually any ordinance and, thus, does not comply with R.C. 731.30. See Luff at 2. An emergency ordinance must do more than state it is necessary; it must state why it is necessary.
Here, the ordinance in question states it is an emergency measure "due to the fact that it established the position of a necessary employee." This merely states the position is necessary. It fails to explain why it must be created immediately. Again, in order for this ordinance to pass as an emergency, there must be a statement as to the circumstances necessitating the immediate creation of the position. This ordinance fails to comply with R.C. 731.30 as did those in Walsh, Snyder, andMlakar. In this case, the sense of the ordinance is that there is an emergency because there is an emergency. Thus, it is not a valid emergency ordinance.
After reviewing how other courts have applied the law to various emergency ordinances, it appears the reason the majority reaches the conclusion it does is due to its misunderstanding of the underlying facts in this case. As stated above, the majority apparently believes the Village Administrator's position is meant to complement that of the Board of Trustees of Public Affairs, i.e. the Village Administrator will run day-to-day operations in conjunction with the Board. This would be the basis for its conclusion that "the Village of Bellaire requires a village administrator immediately or valuable village services will be jeopardized." As noted above, the record discloses the Village had previously established a Board of Trustees. It and the Village Administrator cannot co-exist under statute because the two perform precisely the same function. Because there was already some entity in place within the Village that could perform the duties of a village administrator, there is simply no basis for the majority's statement that the lack of a village administrator could jeopardize valuable village services. Thus, the reason for the emergency the majority appears to find implicit within the ordinance is, in fact, non-existent.
Even though I am forced to engage in the above discussion to illustrate why the majority's opinion is incorrect, the fact that the majority and I are engaged in such a discussion demonstrates a second problem with the majority's method of analysis. The majority takes the statement given in the ordinance, applies law and facts to that statement, and states that "in other words" the Village Council said the need was immediate "or valuable village services will be jeopardized." While this may truly be what the Village Council thought when it passed the ordinance, it did not say so within the ordinance itself. While this court could examine the minutes of the Village Council's meetings to determine for ourselves whether the municipal legislature determined an emergency exists, doing so is irrelevant. Such an examination on our part has no bearing on whether the public as a whole, and not just those present at meetings of the municipal legislature, is provided with information which "may be highly pertinent in future decisions at the ballot box." Emrick at 504. Simply stated, the majority's choice to engage in this form of analysis frustrates the purpose of R.C. 731.30.
In reaching this conclusion I vehemently object to the majority's characterization of this opinion as an attempt to review whether or not an emergency actually existed. I do not intend to give the impression that I doubt whether or not an emergency exists. As can be seen above, my analysis is based upon what words are found in the ordinance itself, not on whether or not I disagree with the Village Council's determination of the existence of an emergency. The reason I point out the majority's factual inaccuracies is because its analysis is based upon those inaccuracies. In Paragraph 22, the majority states the ordinance sought an emergency appointment of a village administrator, the statutory duties of a village administrator, and concludes that the village administrator is necessary for the continued provision of village services. However, as illustrated above, the Board of Trustees has the same statutory duties as the proposed Village Administrator. There is no legal reason for the majority's logical leap from expressing the statutory duties of a village administrator to assuming the immediate need for a village administrator so as not to jeopardize the continued provision of valuable village services. Simply stated, I do not base my opinion on the relationship between the Board Trustees and the Village Administrator while the majority does.
It is ironic that one of the reasons the majority believes this ordinance complies with R.C. 731.30, its statement "[t]he Council has said, in effect, that it is an emergency because it is immediately necessary, is the reason it fails to comply with statute." The flaw in the present emergency ordinance is the same as those in Walsh, Snyder, and Mlakar because it has failed to explain why it is immediately necessary. In order to protect the public's ability to challenge the decision of its elected representatives to insulate its decision from immediate and specific electoral scrutiny, courts must continue to insist that municipalities explain the basis for the emergency within the emergency legislation in order to comply with R.C. 731.30. Thus, no matter how strongly the municipal legislature feels an emergency existed, when it fails to properly communicate that conviction within theemergency measure itself, then the measure is an invalid emergency measure under R.C. 731.30. The majority's decision weakens the rights guaranteed to the citizens of this state by the Ohio Constitution and statute. For these reasons, I would reverse the trial court's decision and entry final judgment for the defendants.