Tart, J.
 

 Case No. 32387 is an action in mandamus originating in this court and was heard on a demurrer to the petition.
 

 So far as material to consideration of the question presented, the petition alleges that the city of Fostoria, a noncharter city, had “constructed and tor many years # * * operated and is now operating as a public utility sewers and appurtenant facilities for the collection and disposal of sanitary sewage in said city, the service of which was and is furnished by said city generally to all properties therein without discrimination, within the limits of the capacity of the system”; that, on June 20, 1950, the city council passed ordinance 2132 which established rates to be charged for the use of its sewage system; and that, on the same day, the council passed ordinance 2133 which provided for the issuance of mortgage revenue bonds in the amount of $750,000.
 

 It appears, from the provisions of ordinance 2133, a copy of which is attached to the petition and made a part thereof, that the proceeds of the bond issue, provided for by that ordinance, are to be used to finance the enlargement of the sewage collection and disposal system “by construction of a new intercepting sewer and installation and reconstruction of pumps, tanks,
 
 *215
 
 piping and other structures for enlarging the capacity of the sewage disposal plant.”
 

 The petition alleges further that, • within 30 days after the passage of the foregoing ordinances, a petition, demanding a referendum on ordinance 2132 and signed by more than 10% of the electors of the municipality, was filed with the auditor of the municipality, and a similar petition was likewise filed demanding a referendum on ordinance 2133; and that the city council has refused to submit either of the two ordinances to a referendum.
 

 The question for determination in this case is whether either of these two ordinances is subject to referendum by reason of the provisions of Section 5 of Article XVIII of the Constitution, which reads:
 

 “Any municipality proceeding to
 
 acquire,
 
 construct, own, lease or operate a public utility,
 
 or to contract with any person or company therefor, shall
 
 act by ordinance
 
 and no such ordinance shall take effect until after thirty days from its passage. If within said thirty days a petition signed by ten per centum of (he electors of the municipality shall be filed with the executive authority thereof demanding a
 
 referendum on such ordinance
 
 it shall not take effect until submitted to the electors and approved by a majority of those voting thereon. The submission of any such question shall be governed by all the provisions of section 8 of this article as to the submission of the question of choosing a charter commission.” (Emphasis added.)
 

 It may be inferred from the allegations of the petition that the city has heretofore been furnishing the services of its sewers and appurtenant facilities without charge. Ordinance 2132, which is attached to the petition and made a part thereof, provides for the establishment and collection of charges upon all premises served by or having connections with that municipal
 
 *216
 
 sewage system and for the use of monies collected in that way for the payment of the cost and expense of the operation, maintenance, repair and management, of the system and for the payment of debt charges on bonds issued for extensions and improvements of the system. It is apparently the contention of relator that, in so doing, the municipality is, within the words of the constitutional provision, “proceeding to 43 * 35 operate a public utility. ’ ’ In our opinion, such a contention is inconsistent with the decision of this court in
 
 Shryock, a Taxpayer,
 
 v.
 
 City of Zanesville,
 
 92 Ohio St., 375, 110 N. E., 937.
 

 As pointed out by Nichols, C. J., on page 378 in the court’s opinion in that case:
 

 “If every repair, addition or improvement to any utility is to be regarded in the same light as the construction of an entire system, the constitutional provision would be impracticable and cumbersome. Evidently no such result was contemplated, and such a construction is not required. Had it been the purpose of the Constitution framers to require every repair and improvement to come within the terms of Sections 4 and 5 of Article XVIII, it is reasonable to believe that they would have said so.
 

 “It is quite evident that these provisions of the Constitution were to have no reference to utilities municipally owned and already in operation * * V
 

 Likewise, if, by every step taken in the operation of a public utility, a municipality was regarded as ‘ ‘ proceeding to * * * operate a public utility,” within the meaning of those constitutional provisions, such provisions would be impracticable and cumbersome.
 

 Relator’s contention might be sound if Section 5 of Article XVIII of the Constitution read, “Any municipality acquiring, constructing, owning, leasing or operating * * * or contracting * * The words “pro
 
 *217
 
 ceeding to” were apparently intended to be given a narrow meaning so as to indicate that tbe section was to apply only when a municipality was
 
 beginning
 
 “to acquire, construct, own, lease or operate * * * or to contract * * The decisions of this court certainly lead inevitably to that conclusion.
 
 Shryock, a Taxpayer,
 
 v.
 
 City of Zanesville,
 
 supra;
 
 State, ex rel. Didelius, City Solicitor,
 
 v.
 
 Commission of City of Sandusky,
 
 131 Ohio St., 356, 2 N. E. (2d), 862;
 
 State, ex rel. Nicholl, a Taxpayer,
 
 v.
 
 Miller, Village Clerk,
 
 127 Ohio St., 103, 187 N. E., 75;
 
 State, ex rel. Schell,
 
 v.
 
 Abbott,
 
 132 Ohio St, 160, 5 N. E. (2d), 408:
 
 City of Middletown v. City Commission of Middletown,
 
 138 Ohio St.., 596, 605, 37 N. E. (2d), 609.
 

 Relator contends further that such a substantial improvement. of the sewage disposal system as involved in the instant case amounts, in fact, to ‘ ‘ acquiring ’ ’ a public utility. In support of this contention, relator refers to some of the language of Chief Justice Nichols on page 379 in the opinion in the
 
 Shryock case,
 
 where he pointed out that there was in that case no attempt, “under the guise of repairing or improving a public utility, * * * to substantially reconstruct a utility” or “no suggestion or intimation of altering or rebuilding the plant already existent.”
 

 In
 
 State, ex rel.,
 
 v.
 
 Miller, supra,
 
 it was held that an ordinance, providing “for an addition to an existing public utility and not for the acquisition or construction of a public utility, ” was not subject to referendum under Section 5 of Article XVIII of the Constitution.
 

 In
 
 State, ex rel. Schell,
 
 v.
 
 Abbott,
 
 54 Ohio App., 510, 23 Ohio Law Abs., 510, 8 N. E. (2d), 254, it was held that an ordinance, providing for “the alteration, repairing, improvement, enlarging and extending” of a municipal utility, was not subject to referendum under the provisions of Section 5 of Article XVIII of the
 

 
 *218
 
 Constitution. The question arose on a demurrer to the petition, which alleged “that the real purpose and object of the ordinance is not to extend, repair and enlarge the existing municipal electric light plant of the village but is designed and intended to authorize the reconstruction of the electric plant by replacing old equipment with new. ’ ’ This court dismissed an appeal from that decision on the ground that no debatable constitutional question was involved (132 Ohio St., 160, 5 N.E. [2d], 408).
 

 It may be observed that there are no similar allegations in the petition in the instant case. The petition in the instant case does not indicate that the ordinances, or any ordinances or resolutions related thereto, endeavor to do anything beyond enlarging or improving an existing utility or constructing additions, extensions and enlargements thereto.
 

 Section 5 of Article XVIII of the Constitution says nothing about extending a municipal utility. On the other hand, section 12 of that article does deal not only with the acquisition and construction, but also with the extension of a municipal utility. See
 
 City of Middletown
 
 v.
 
 City Commission of Middletown, supra.
 

 These two sections of the Constitution were submitted to the people for approval and adopted at the same time. In our opinion, if the people had intended the language of section 5 to cover a proceeding to substantially reconstruct a utility, to alter or rebuild it, to enlarge, improve or add to it, or to otherwise extend it, they would have so stated in specific language. The use of the word “extends” in section 12 and its absence from section 5 indicate to us that section 5 was not intended to cover any such extension of a municipal utility.
 

 Case No. 32385 is also an action in mandamus originating in this court and was also heard on a demurrer to the petition.
 

 
 *219
 
 So far as material to consideration of the question presented, it is sufficient to state that, in addition to allegations such as those described as being in the petition in case No. 32387, the petition in this case alleges that the city auditor has refused to certify the referendum petitions to the boards of elections.
 

 The question for determination in this case is whether either of these two ordinances is subject to referendum by reason of the provisions of Section 4227-2
 
 el seq.,
 
 Genera] Code.
 

 Section 4227-3, General Code, provides, so far as material to the questions involved in this case:
 

 “* # * emergency ordinances or measures necessary for the immediate preservation of the public peace, health or safety in such municipal corporation, shall go into immediate effect. Such emergency ordinances or measures must, upon a yea and nay vote, receive the vote of two-thirds of all the members elected to the council or other body corresponding to the council of such municipal corporation, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure. * * *”
 

 It has been held by this court that that section is constitutional, and that, by reason of its provisions, an emergency ordinance is not subject to referendum under the provisions of Section 4227-2
 
 et seq.,
 
 General Code.
 
 Shryock, a Taxpayer,
 
 v.
 
 City of Zanesville, supra.
 
 See
 
 Vansuch, Dir.,
 
 v.
 
 State, ex rel. Fetch,
 
 112 Ohio St., 688, 689, 148 N. E., 232.
 

 Relator contends that neither of these two ordinances was an emergency measure and that merely labeling them as such did not exempt them from referendum. In support' of this contention, relator argues that Section 4227-3, General Code, requires a statement of the reasons for the necessity of declaring that an ordinance is an emergency, and that this indicates that
 
 *220
 
 the sufficiency of such reasons are to be subject to judicial review. The petition discloses that each ordinance was enacted as an emergency ordinance and that, in each ordinance, there is a section setting forth reasons why the measure was necessary. It is, however, contended that the reasons stated do not show the necessity required.
 

 Outside this state, the judicial precedents relating to these contentions are in conflict. 37 American J urisprudence, 765, Section 153; annotation, 55 A. L. R., 779. See annotations, 7 A. L. R., 519, and 110 A. L. R., 1435. Furthermore, there seems at one time to have been some doubt in this state as to what the law is relating to these contentions. See 28 Ohio Jurisprudence, 462, Section 285, and
 
 State, ex rel. Schorr,
 
 v.
 
 Kennedy, Secy. of State,
 
 132 Ohio St., 510, 9 N. E. (2d), 278, 110 A. L. R., 1428. However, we are of the opinion that such contentions cannot now be sustained.
 

 In
 
 Holcomb, AUd.,
 
 v.
 
 State, ex rel. Coxey,
 
 126 Ohio St., 496, 186 N. E., 99, paragraph three of the syllabus reads:
 

 “The duty and responsibility of determining the emergency and the necessity that a measure go into immediate effect are confided to the legislative branch of government. If the prescribed procedure for enactment thereof is followed, such measure goes into effect immediately upon its passage.”
 

 It may seem strange to sustain legislation as emergency legislation not subject to referendum, where there is in fact no emergency, or where the reasons given for the necessity and for declaring the emergency do not appear to be valid reasons. However, as does Section 4227-3, General Code, provisions for emergency legislation usually safeguard referendum rights by requiring substantially more than a majority vote to enact emergency legislation. The statutory
 
 *221
 
 requirement of stating reasons for declaring the emergency is provided only to satisfy voters that their representatives did have valid reasons for the necessity of declaring that the ordinance was an emergency. If there was in fact no emergency or if the reasons given for such necessity are not valid reasons, the voters have an opportunity to take appropriate action in the subsequent election of their representatives. However, the existence of an emergency or the soundness of such reasons is subject to review only by the voters at such a subsequent election of their representatives. They are not subject to review by the courts.
 

 The demurrer in each case is sustained.
 

 Writs denied.
 

 Weygandt, C. J., Matthias, Hart, Stewart and Faught, JJ., concur.
 

 Zimmerman, J., not participating.