Matthias, J.
Although the Court of Appeals considered other questions presented, it held the ordinance upon which the charge against the defendant was based to be invalid and discharged the defendant. Therefore, the primary and paramount question be-' fore this court is the validity of that ordinance.
The decision of the Court of Appeals adverse to the validity of the ordinance was based upon its holding that the ordinance was not properly enacted as an emergency measure, and that it was not advertised as required by the city charter and, therefore, never went into effect.
The third section of the ordinance reads as follows:
“That this ordinance is hereby declared to be an emergency measure necessary for the preservation of the public peace, health and safety, and shall take effect upon its passage and approval by the mayor.”
*35 Section 11 of the charter of the city provides as follows:
“All ordinances and resolutions shall be in effect from and after thirty (30) days from the date of their passage by the council except as otherwise provided in this charter. The council may, by a vote of six of its members, pass emergency measures to take effect at the time indicated therein. An emergency measure is an ordinance or resolution necessary for the immediate preservation of the public peace, property, health, or safety.”
Section 82 of the city charter is in part as follows:
“The provisions of the General Code as to the initiative and referendum shall remain in full force and effect, except that the number of electors necessary for an initiative petition shall be three per cent, and for a referendum petition six per cent, and such petitions shall be filed with the city clerk.”
It is provided, as follows, by Section 1/ of Article II of the state Constitution:
“The initiative and referendum powers are hereby reserved to the people of each municipality on all questions which such municipalities may now or hereafter be authorized by law to control by legislative action; such powers shall be exercised in the manner now or hereafter provided by law.”
The initiative and referendum powers so reserved to the people of the municipalities are fully set out in the state Constitution.
Pursuant to the provisions of the Constitution, the manner of the exercise of the power of the referendum is provided by Section 4227-3, General Code, which reads in part as follows:
“ * * * emergency ordinances or measures necessary for the immediate preservation of the public peace, health or safety in such municipal corporation, shall go into immediate effect. Such emergency ordinances *36 or measures must, upon a yea and nay vote, receive the vote of two-thirds of all the members elected to the council, or other body corresponding to the council of such municipal corporation, and the reasons for such 'necessity shall be set forth in one section of the ordinance or other measure.” (Emphasis supplied.)
: It being specifically-provided by section 82 of the charter of Youngstown that, with'the exception of the percentage'.of signatures of electors required on initiative and referendum petitions, “the provisions of the General Code as to the initiative and referendum shall remain in full force and effect,” it is imperative that ordinances of the municipality, in order to be effective as; emergency ordinances, -must- set forth in one section thereof the reasons for-such:necessity, and that the ordinances receive ¡the' vote of- two-thirds of the members- of the council.!.It seems to be conceded by counsel for the defendant that the ordinance involved herein received the vote of two-thirds of the members of council. Plaintiff contends it received the unanimous vote of council. However, as hereinafter disclosed, that fact becomes immaterial.
This court has- heretofore specifically held that where a legislative-measure, passed either by the General Assembly of the state or by the council of a municipality, is declared to be an emergency measure necessary -for the preservation of the public peace, health or safety and sets forth the reasons for the immediate necessity thereof, such- determination is not reviewable by the courts, the duty and responsibility of such determination having been confided to the legislative branch of the government. State, ex rel. Durbin, v. Smith, Secy. of State, 102 Ohio St., 591, 133 N. E., 457; Holcomb, Aud., v. State, ex rel. Coxey, 126 Ohio St., 496, 186 N. E., 99; State, ex rel. Schorr, v. Kennedy, Secy. of State, 132 Ohio St., 510, 9 N. E. *37 (2d), 278, 110 A. L. R., 1428; and State, ex rel. City of Fostoria, v. King, 154 Ohio St., 213, 94 N. E. (2d), 697.
However, it is essential to the validity of snch measures as emergency measures that the mandatory requirements specified be adherred to and followed, among which is that “the reasons for such necessity shall be set forth in one section of the ordinance or other measure.” Although the finding of the emergency character of the proposed legislation and the determination of the legislative body as to the necessity that such legislation go into immediate effect and the reasons announced therefor are not subject to review by the courts, it is mandatory that the legislative body must consider, determine and announce the reasons for such necessity and that the same be set forth in one'section of the ordinance or other measure.
In the respect indicated, the requirement of the statute essential to the enactment of this ordinance as an emergency measure, permitting it to go into immediate effect, was not followed. It, therefore, lacked validity as an emergency enactment. It is to be observed, however, that such ordinance was enacted March 7, 1928, and that there was no challenge of its validity as an emergency measure by a referendum proceeding or otherwise. Except in the respect essential to its going into effect as an emergency ordinance it was validly enacted. The city’s charter requires that all ordinances of the city shall be published. In the absence of any evidence to the contrary it is proper to assume that such provision was complied with and that the ordinance was duly published and in due time became effective as a valid ordinance of the city of Youngstown. Vansuch, Dir., v. State, ex rel. Fetch, 112 Ohio St., 688, 148 N. E., 232.
We are of the opinion, therefore, that the Court of *38 Appeals was in error in- holding such ordinance void and in not only reversing the judgment of the trial court but discharging the defendant.
Having determined that the ordinance, upon which the charge involved in this case was based, was validly enacted, it becomes necessary to consider the further findings of prejudicial error appearing in the journal entry of the Court of Appeals, to wit:
“* * * the trial court committed error in the admission of testimony; there was misconduct on the part of counsel for the city of Youngstown, all of which deprived the appellant of a fair and impart! ah trial.” The Court of Appeals in its opinion stated:
. “If we could have held the ordinance valid the judgment would have been reversed and the cause remanded to the Municipal Court of Youngstown for further proceedings to be had in accordance with law, for error prejudicial to defendant in the following respects: For misconduct of counsel for the city in his opening1 statement to the jury after admonition by the court to desist; for misconduct of counsel for-the eity in the introduction of evidence in. this, that he persisted over objection in interrogating certain witnesses with reference to matters the court had previously declared incompetent; for misconduct of counsel for the city in his argument to the jury; for error of the trial court in admitting incompetent evidence on behalf of the city over objection of defendant; and in sending to the jury over objection certain written statements containing incompetent and irrevelant matters.”
We do not have the benefit of a definite statement as to the claimed admission of incompetent evidence, but an examination of the record fails to disclose the improper admission of any evidence which we deem prejudicial to the defendant.
The record discloses that after the defendant was *39 in custody lie requested, and was furnished, a bill of .particulars in which the city amplified its original charge by stating that the defendant “unlawfully obtained his living- by criminal’means and practices, to wit, by promoting games of chance * * * through the operation of illegal bookie establishments * * * and by playing with cards and dice for money.”
The defendant contends that any evidence of his activities prior to January 1, 1947, and after the date of his arrest, was incompetent, and particularly that evidence of his previous illegal acts and conviction of other crimes was inadmissible. The court, however, ruled that the city might show acts similar to those alleged in’the bill of particulars, that is, gambling and operating a bookie establishment.
Under the limitations established by the trial court the city introduced evidence that on January 14 and 15, 1949 (during the period between the arrest of the defendant and his trial on the charge in question), the defendant had continued the same gambling activities as theretofore, and that he visited a notorious gambling establishment known as Jungle Inn, entering therein at the back door.
These acts, both before and after the date stated in the original charge and also following defendant’s arrest, were reasonably contemporaneous with the period of time covered by the allegations in the bill of particulars. The fact that they occurred after the arrest of the defendant does not, of itself, make the evidence incompetent and in the instant case this evidence tended to prove a continuance of the identical conduct and practices of the defendant which, according to his own admission, he had long pursued and which had finally brought about his arrest. Section 13444-19, General Code, and 12 Ohio Jurisprudence, 353, Section 331. See Whiteman v. State, 119 Ohio St., 285, 164 N. E., 51, 63 A. L. R., 595.
*40 Section 13444-19, General Code, is as follows:
“In any criminal case where the defendant’s motive, intent, the absence of mistake or accident on his part, or the defendant’s scheme, plan or system in doing an act, is material, any like acts or other acts of the defendant which may tend to show his motive, intent, the absence of mistake or accident on his part, or the defendant’s scheme, plán or system in doing the act in- question, may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another or subsequent crime by the defendant.”
The record contains two typewritten statements of admissions of defendant reduced to writing by the police officers of the city of Youngstown, which were admitted in evidence and sent to the jury as exhibits. Although unsigned by the defendant, these statements constitute admissions made by him to police officers and by them at the time reduced to writing, and were fully authenticated by oral testimony of the police officers.
One of the reports involves the discharge of a pistol by the defendant on Decemeber 31, 1946, about 4 a. m., in the Purple Cow restaurant of the Pick-Ohio Hotel in the city of Youngstown. That statement contains the defendant’s version of how the shooting occurred, but shows his constant and consistent gambling activities. He fully admitted that he had been in the night club business ever since he came to Youngstown in 1932; that he was the proprietor of the 115 Club, located at 115 East Federal street in Youngstown; and that the altercation during which the pistol was discharged resulted from his action in barring one Bogash from that club.
The other statement contains detailed admissions *41 by the defendant on August 3, 1948, when he was brought into the police station for questioning preceding the filing of the charge which is the basis of the prosecution in this case. At that time he recited quite fully his long continued activities, including a statement that he was a gambler by profession and inclination and that he was a partner with several others in local bookmaking enterprises and took 50 per cent of the monthly profits from six or seven other horse-betting rooms. He listed his income from these horse-betting rooms alone in 1947 (to the date of the statement) at $16,000 and stated that his income was procured by various forms of gambling, including horse betting, crap shooting and card playing. After defendant’s statement was completed and reduced to writing in his presence, he repeatedly admitted that all the statements therein were true. He refused to sign same, but it should be noted that he did not take the stand to testify in his own behalf or to refute any of the very damaging testimony against him.
When the two statements were offered in evidence an exception was taken by his counsel but he did not except specially to the portions thereof which might have been claimed to be inapplicable. Therefore, if any portion of the statements was relevant and material it was not prejudicial error to admit the statements in full over general objection. (12 Ohio Jurisprudence, 878, Section 893), and, in view of the entire record, their admission should not be held to justify a reversal of defendant’s conviction.
Evidence was introduced to show that on January 20, 1947, the defendant sold the 115 Club, including the fixtures and furniture, which were later' removed to a warehouse operated by The Wm. Herbert & Son Company. One of the purchasers denied that there was any gambling equipment included in the furniture *42 and fixtures bought by them from the defendant. However, in rebuttal a warehouse receipt was placed in the record showing that among the furniture stored were poker tables and crap tables, all of which had been used in the operation of the 115 Club.
When the case was submitted to the jury the court, in its charge, expressly limited the evidence to be considered by it to the years 1947 and 1948 and to the charge included in the bill of particulars. The court instructed the jury as follows:
“In determining the intent of the defendant, you may consider the testimony and evidence as to other alleged violations of law pertaining to promoting games of chance through the operation of illegal bookie establishments - and/or playing with cards and/or dice for money, if any you find from the evidence. The court instructs and cautions you, the jury, that you may only consider the evidence touching the alleged violations of gambling ordinances or laws at other times than charged in the affidavit, if you so find, for the sole purpose of enabling you to determine the intent of the defendant during the time at which it is claimed he was a suspicious person as set forth in this affidavit.”
Misconduct on the part of the city attorney in his opening statement to the jury and in his argument to-the jury is claimed. An examination of the record does not disclose prejudicial error in this respect. The city attorney, in his opening statement to the-jury and in his later argument, asserted that the city claimed the defendant during his entire adult life never had honest and legitimate employment. Objection was made by the defendant but the court allowed the city to proceed and the statement was reiterated several times throughout the argument. Those statements were justified by the record.
*43 In the closing argument to the jury, by mistake, the eity attorney used an incorrect name in an attempt to tie the activities of the defendant to those of an admitted partner in a gambling establishment. Upon challenge by counsel for the defendant, the attorney for the city immediately admitted the error and corrected it. Although the arguments throughout the trial were forceful there was no misconduct on the part of the city attorney such as would warrant a reversal of the judgment. Nothing worse was said by counsel for the city about the defendant’s-conduct than the defendant himself had said.
The terms of the suspicious-persons ordinance are broad and are intended to be particularly applicable to people engaged in . illegal practices as admittedly was the defendant. Morgan, Supt., v. Nolte, 37 Ohio St., 23, 41 Am. Rep., 485. The charge in that case, on which the defendant was convicted, was that of being a known thief and found in the city of Cincinnati, contrary to the ordinance of the city. The defendant was convicted in the police court of Cincinnati and sent to the workhouse. Thereafter he was released therefrom by the Probate Court in a habeas corpus proceeding.
A petition in error was allowed by the Supreme Court to be filed therein. It reversed the order of the Probate Court. In the Supreme Court opinion by White, J., following a reference to the fact that various states have made it an offense to be a common drunkard, a common gambler or a common thief, “each state defining the offenses according to its own views of public policy,” is the statement:
“In such cases the offense does not consist of particular acts, but in the mode of life, the habits and practices of the. accused in respect to the character *44 or traits which it is the object of the statute creating the offense to suppress.” See, also, Welch v. City of Cleveland, 97 Ohio St., 311, 120 N. E., 206.
The trial court in the instant case properly allowed any evidence which was competent to prove the allegations in the affidavit and the bill of particulars and the evidence disclosed by the record fully established a violation- of the ordinance by the defendant.
The sentence imposed upon the defendant by the trial court was a fine of $100 and costs and a sentence of 30 days in the city jail. Considering the evidence adduced in this case, the sentence does not seem to be immoderate.
The judgment of the Court of Appeals is reversed and the judgment of the Municipal Court is affirmed.

Judgment reversed.

Weygandt, C. J., Zimmerman, Stewart, Middleton, Taet, and Hart, JJ., concur.