## State ex rel. Emrick
### v.
### Wasson
*[Cite as 4 AOA 53]*

Case No. 11826
Montgomery County (2nd)
Decided June 5, 1990

*Steven Runge, 401 South Main Street, Franklin, Ohio 45005, for Relators-Appellants.*

*William Forbes, 101 North Main Street, Miamisburg, Ohio 45342, for Respondents-Appellees.*

GRADY, J.

In this appeal we are asked to determine whether the trial court erred in its conclusion of law that an ordinance of the Germantown City Council was properly enacted as an "emergency ordinance" and that assessments may be imposed on real property through that procedure. Relators-Appellants are owners of property burdened by the assessments, and they argue that the emergency ordinance is invalid. The trial court granted summary judgment in favor of the City Council. We find that the trial court erred in its conclusion that the "emergency ordinance" met the requirements for such mea-sures imposed by the Revised Code and the Germantown Charter. The summary judgment will be set aside and appropriate relief entered for Relators-Appellants.

## I.
### Factual Posture

The Germantown city council decided to make infrastructure improvements to Market Street. These improvements included widening the street and improving its surface, and installing dry wells and curbs to improve drainage. To this end, the city council adopted ordinance No. 88-31. Section 9 of the ordinance provided:

"* * * this ordinance is hereby declared to be an emergency measure necessary for the immediate preservation of the public peace, health, safety, and welfare, of for the urgent benefit or protection of the inhabitants of the City of Germantown, and for the reason that immediate action is required for the timely and efficient construction of the improvements hereinabove described, and shall take effect immediately upon its passage, pursuant to Section 2.05 of the Charter of the City of Germantown."

Section 2.05 of the city charter, entitled "Emergency Ordinances," provides as follows:

"To meet a public emergency affecting life, health, property, or the public peace, the Council may adopt one (1) or more emergency ordinances, but such ordinances *may not levy taxes*, grant, renew, or extend a franchise, zone land, regulate the rate charged by any public utility for its services, or authorize the borrowing of money, except as provided in subsection 1.10(b). An emergency ordinance shall be introduced in the form and manner prescribed for ordinances generally, except that *it shall be plainly designated an emergency ordinance and shall contain, after the enacting clause, a statement that an emergency exists and describing it in clear and specific terms.* An emergency ordinance may be adopted with or without amendment, or rejected at the meeting at which it is introduced, but five (5) affirmative votes shall be required for adoption. After its adoption, the ordinance shall be published and printed as prescribed for other adopted ordinances. *It shall become effective upon adoption* or at such later time as it may specify. An emergency ordinance may be repealed by adoption of a repealing ordinance in the same manner specified in this section for adoption of emergency ordinances. (Emphasis supplied)"

Following adoption of the ordinance, owners of property along Market Street on which the assessments would be imposed circulated a peti-

tion to compel a referendum concerning city council's action. The property owners obtained the requisite numbers of electors' signatures and presented the petition to Wasson, City Clerk, for verification of the petition. Wasson found the petition invalid because the challenged ordinance was an emergency ordinance which took effect immediately and thus was exempt from referendum according to Section 9.01(b) of the Charter.

The property owners brought this action against the Clerk, Mayor and members of the City Council, and the City of Germantown, requesting mandamus or alternative relief. The requested mandamus would require the Clerk and Council to accept the referendum petitions and submit the question of approval or rejection of the ordinance at an election. Alternative relief in the form of restraint or injunction against further action by the City, a declaration that the ordinance is invalid, or other appropriate relief, was also requested. The City and other adverse parties requested dismissal of the complaint.

Both parties filed motions for summary judgment. The trial court found no genuine issue of material fact, and neither party challenged that finding. The trial court concluded that the ordinance was a validly enacted emergency ordinance. The court also concluded that the ordinance did not enact a tax, a matter available through regular ordinance only, and that the emergency ordinance should not be set aside for that reason. The court then found that the property owners were not entitled to the relief requested and entered summary judgment for the City and its co-parties.

Appellants have filed a timely notice of appeal and have presented two assignments of error.

## II.
### Sufficiency of the Ordinance

The property owner's first assignment of error states:

"THE TRIAL COURT ERRED IN FINDING THAT ORDINANCE NO. 88-31 QUALIFIES AS AN EMERGENCY ORDINANCE PURSUANT TO O.R.C. 731.30 AND 2.05 OF THE CHARTER OF THE MUNICIPALITY OF GERMANTOWN, OHIO."

The right of the people to challenge the actions of municipal governments by referendum is secured by Art. II, Section 1f of the Ohio Constitution. This section provides, in pertinent part, that:

"The initiative and *referendum power are hereby reserved to the people of each municipality on all questions* which such municipalities may now or hereafter be authorized by law to control by legislative action * * *. (Emphasis supplied)" This constitutional guarantee is "an invaluable arm of the democratic process" in that it facilitates popular participation in the decisions of municipal governments. *Walsh* v. *Cincinnati City Council* (1977), 54 Ohio App.2d 107, 109. See, also, *State ex rel. Nolan* v. *ClenDening* (1915), 93 Ohio St. 264, 277. The constitutional right of referendum acts as a check on municipal legislatures by ensuring that the electorate can voice concern about the actions of government, and oppose those actions at the ballot box if necessary. Cf., *ClenDening, supra,* at 277-278.

Art. II, Section 1f does not, however, apply to emergency measures. *State ex rel. City of Fostoria* v. *King* (1950), 154 Ohio St. 213; *Shyrock* v. *Zanesville* (1915), 92 Ohio St. 375. See, also, *Village of McClure* v. *Rhoads* (October 3, 1985), Henry App. No. 7-84-1, unreported. Because emergency measures seek to address potentially harmful situations requiring a prompt response, referendum is an ill-suited device for challenging such measures. The more appropriate means for challenging the wisdom or desirability of an emergency measure is the subsequent election where voters can voice their displeasure through the ballot. *King, supra,* at 221.

By declaring an act an emergency measure a municipal legislature effectively insulates the results of its decision from immediate and specific electoral scrutiny, scrutiny normally guaranteed by Art. II, § 1f. Although the duty and responsibility for determining an emergency is vested solely in the municipal legislature, and thus beyond our consideration, see, *Jurcision* v. *Cuyahoga Cty. Bd. of Elections* (1988), 35 Ohio St.3d 137, *City of Youngstown* v. *Aiello* (1951), 156 Ohio St. 32, *King, supra,* the adequacy and propriety of the enacting process is a matter clearly within the purview of a reviewing court. Cf., *Aiello, supra; Cincinnati* v. *Hillenbrand* (1921), 103 Ohio St. 286; *Village of Moscow* v. *Moscow Village Council* (C.P. 1984), 29 Ohio Misc.2d 15. See, generally, 20 Ohio Jurisprudence 3d (1980), Counties, Townships, and Municipal Corporations, §538. Municipal governments cannot completely insulate their decisions from public or judicial inspection merely by classifying them emergency measures.

Our role is not to second guess the municipal legislature's determination that an emergency exists. Rather, our role is to secure conscientious compliance with the process mandated for enact-

ing emergency measures. The focus of our examination is whether the municipal legislature complied fully with state law *and* the provisions of its own charter. Only in this way can we be sure that a municipal legislature provided the public with important information about the circumstances leading to the emergency measure. Such information may be highly pertinent in future decisions at the ballot box.

Before a municipal government can enact an emergency measure, it must state the reasons for that measure. As R.C. 731.30 provides, in pertinent part:

"* * * emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety of such municipal corporation, shall go into effect immediately. Such emergency ordinances or measures * * * receive a two-thirds vote of all the members elected to the legislative authority, *and the reasons for such necessity shall be set forth in one section of the ordinance or other measure.*" (Emphasis supplied)

R.C. 731.30 imposes an affirmative duty on municipal governments to provide in the text of the ordinance or measure an explanation of the reasons for the emergency. As stated in *Aiello, supra,* at 37:

"* * * it is essential to the validity of such measures as emergency measures that the mandatory requirements specified be adhered to and followed, among which is that 'the reasons for such necessity shall be set forth in one section of the ordinance or other measure.' Although the finding of the emergency character of the proposed legislation and the determination of the legislative body as to the necessity that such legislation go into effect and the reasons announced therefore are not subject to review by the courts, *it is mandatory that the legislative body must consider, determine and announce the reasons for such necessity and that the same be set forth in one section of the ordinance or other measure.* (Emphasis supplied)" See, also, *Walsh, supra; State ex rel. Johns* v. *Bruss* (1955), 99 Ohio App. 314, at syllabus 1 (Ordinance must "state the reasons for such necessity.").

Municipal legislatures have a three-part obligation to consider, determine *and* announce the reasons for an emergency. *Aiello, supra; village of Moscow, supra.* A clear explanation fulfills two important objectives. First, it demonstrates to the public that the legislature weighed fully the nature of the emergency before enacting a remedial measure. Second, it provides the public with relevant information. Consequently, purely conclusory, tautological, or illusory language in an emergency measure does not comport with the prerequisites of R.C. 731.30 or its accompanying case law. *Goodman* v. *Youngstown* (App. 1937), 24 Ohio L. 696, 702 ("The mere statement that the ordinance is necessary for the preservation of the public peace, health and safety is but a conclusion of the council, without the statement of any reason therefor."). See, also, *Bruss, supra* at 317; *Walsh, supra.*

Section 2.05 of the Germantown city charter mirrors and amplifies R.C. 731.30. As noted, the charter provides that "an emergency ordinance * * * shall contain * * * a statement that an emergency exists *and describing it in clear and specific terms.*" (Emphasis supplied) Thus, in section 2.05 the citizens of Germantown chose to impose on their city council an even higher burden of justification than that imposed by R.C. 731.30.

Examining ordinance No. 88-31, we find no clear and specific explanation why the emergency measure was necessary to carry out the improvements along Market Street. The ordinance declares that an emergency exists. It then goes on to announce the reason for the ordinance, that being, that "immediate action is required for the timely and efficient construction of the improvements." But why? Nothing in the ordinance explains why immediate action is necessary, nor is there any indication why these improvements are needed for the "urgent benefit or protection of the inhabitants of Germantown." The considerations set out in the text of ordinance No. 88-31 are conclusory rather than explanatory or informative. They fail to meet the burden imposed by the combined effect of the city charter and R.C. 731.30 that the emergency be described in clear and specific terms and that the necessity of the action taken be explained.

While we may not quarrel with Germantown city council's determination that an emergency exists, see, *Jurcision, supra,* we must insist that it conscientiously follow the provisions of its city charter and announce in clear and specific terms the nature of the emergency and the necessity of the action taken. See, *Aiello, supra.* Cf., *Goodman, supra,* at 702 (Emergency ordinances "must be adopted *in strict compliance*" with relevant enacting provisions.). Both R.C. 731.30 and section 2.05 of the city charter require a more detailed and specific explanation of the nature of the emergency. Council's failure to follow the provisions of its own city charter invalidates the ordinance as an emergency ordinance. Cf., *Aiello,*

*supra; Goodman, supra; Kuzman* v. *City of Olmstead Falls* (March 14, 1985), Cuyahoga App. No. 48768, unreported; *Village of Moscow, supra.*

Relators-Appellants' first assignment of error is sustained.

### III.
### Tax v. Assessment

The property owner's second assignment of error states:

"THE TRIAL COURT ERRED IN FINDING THAT THE PROPOSED ASSESSMENTS ARE NOT TAXES AS SET FORTH IN SECTION 2.05 OF THE CHARTER OF THE MUNICIPALITY OF GERMANTOWN PROHIBITING THE LEVYING OF TAXES BY EMERGENCY LEGISLATION".

The essence of the property owners' second argument is that the city charter prohibition against levying taxes through enactment of an emergency measure includes a prohibition against levying assessments through a similar process. The property owners contend there is no meaningful legal distinction between the two concepts because "an assessment is doubtless a tax * * * ." Relators-Appellants' brief, at 5, citing Black's Law Dictionary. Therefore, what is prohibited concerning taxes is equally prohibited concerning assessments. We disagree with this reasoning.

Although "tax" and "assessment" are similar concepts in that they are government imposed financial burdens for a public or quasi-public purpose, Ohio maintains a functional distinction between the two. A tax is a burden levied on *citizens* for the general operation of the government. By contrast, an assessment is a narrower burden levied on specific *property owners* to cover the cost of benefits bestowed on the property by public improvements. As stated in *Lima* v. *Cemetery Association* (1884), 42 Ohio St. 128 at syllabus 1:

"In a general sense, a tax is an assessment, and an assessment is a tax; *but there is a well recognized distinction between them, an assessment being confined to local impositions upon property of the cost of public improvements in its immediate vicinity*, and levied with reference to social benefits to the property assessed". See, also, *State ex rel. the Village of Leipsic* v. *Moenter* (1918), 99 Ohio St. 110, 116 (The distinction between tax and assessment "is well settled in the first proposition of the syllabus" in *Lima, supra); Jackson* v. *Bd. of Education* (1926), 115 Ohio St. 368, citing *Lima, supra*. Functionally, an assessment is not a tax as that term is legally

understood in Ohio. But, cf., *Home Owners' Loan Corp.* v. *Tyson* (1938), 133 Ohio St. 184, 190.

Further, two sections of the city charter use the term assessment in contradistinction to the term tax. In section 3.03 the Auditor-Treasurer is authorized to "demand and receive from the County Treasurer taxes, levies, *and assessments* made and certified to the County Auditor by the Council * * * ." And section 7.01, concerning general city finances, states in part that the "laws of the State of Ohio relating generally to budgets, appropriations, debt, bonds, *assessments* * * * and other fiscal matters of the Municipalities shall be applicable * * * ." Here the term assessment is used but not the term tax. Had the authors of the charter used one term, *i.e.* tax, we would concluded that they viewed tax and assessment as functionally integral concepts. However, this they did not do. Rather, the authors of the charter used the terms tax *and* assessment thus portraying a functional distinction between the two government financing concepts. Consequently, we must conclude that those same authors intended to prohibit levying taxes through enactment of an emergency measure but not assessments.

While the question is close because of the ambiguity surrounding the definition of assessment vis-a-vis tax, we nevertheless find that the city charter prohibits levying taxes by an emergency ordinance but not assessments. Where an ambiguity exists concerning the definition and application of terms in a city charter, we will defer to a city council's interpretation and application of those terms. Here, council clearly viewed assessment as distinct from tax. We will defer to council's interpretation absent evidence that this view is clearly erroneous.

We overrule Relators-Appellants' second assignment of error.

### IV.
### Conclusion

We find that the trial court erred in granting the motion for summary judgment of Respondents-Appellees and in denying the motion for summary judgment of Relators-Appellants.

The decision and Final Judgment Entry of the trial court entering judgment in favor of Respondents-Appellees is reversed and vacated.

Even though not appealable at the time the order is entered, error in denying a motion for summary judgment is reviewable on appeal when a final judgment adverse to the movant is entered in the case. *Balson* v. *Dodds* (1980), 62 Ohio St.2d 287. As a part of that review, this Court

may reverse judgments of trial courts and enter judgments supported by the law and the record.

Having concluded that emergency ordinance No. 88-31 is invalid for the reasons in our foregoing opinion, we reverse the judgment and decision of the trial court denying the motion for summary judgment of Relators-Appellants and enter judgment in favor of the movants. We further find that Relators-Appellants are entitled to relief as prayed in their Complaint and appropriate to our findings and determinations.

It is therefore, Ordered that Respondents-Appellees are restrained and enjoined from imposing or collecting assessments for the maintenance or improvement of real property upon the authority of Ordinance No. 88-31 of the City of Germantown.

*Judgment reversed.*

FAIN, J., concurs.

WILSON, J., dissenting.

I agree with the majority's analysis of the difference between taxes and assessments. I further agree that Germantown's charter prohibits the levying of taxes by emergency legislation but not assessments.

However, in my view, we are required to defer to the Germantown City Council's determination that there was a need for the ordinance to go into immediate effect. *Juricisin* v. *Cuyahoga County Board of Elections* (1988), 35 Ohio St. 3d 137. This case in effect held that ordinarily when an emergency measure "sets forth the reasons for the immediate necessity thereof, the legislative determination of the existence of an emergency is not reviewable by a court."

I would affirm.