**J.L. SPOONS, INC., et al., Plaintiffs,**

v.

**CITY OF BRUNSWICK, Defendant.**

**No. 1:97CV3269.**

United States District Court, N.D. Ohio, Eastern Division.

Aug. 21, 1998.

J. Michael Murray, Steven D. Shafron, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, for plaintiffs.

Timothy T. Reid, Reid, Berry & Stanard, Cleveland, OH, for City of Brunswick, Patrick Beyer, Joseph McDermott, Tadeusz Kiernozek, Duane Kuen, Patrolmen Weinhardt, Patrolman Steward, Gregory Rightnour, defendants.

Chester T. Lyman, Jr., Office of Attorney General, Columbus, OH, for Ohio Department of Public Safety, Michael J. Brown, Ray Robinson, defendants.

J. Michael Murray, Steven D. Shafron, Berkman, Gordon, Murray, Palda & DeVan, Cleveland, OH, for J.L. Spoons, Inc., Centre Plaza, Inc., counter-defendants.

## MEMORANDUM AND ORDER

ANN ALDRICH, District Judge.

On November 25, 1996, the City of Brunswick enacted Ordinance 150–96, which requires the licensing and regulation of "sexually oriented businesses," namely "adult cabarets." The stated purpose of Ordinance 150–96 is "to regulate sexually oriented businesses in order to promote the health, safety, morals, and general welfare of the citizens of the City, and to establish reasonable and uniform regulations to prevent the deleterious location and concentration of sexually oriented business within the City." Brunswick Ordinance 150–96 § 1. The Ordinance is generally divided into three sections: (1) provisions governing the licensing of sexually oriented business and their employees (§§ 4–11); (2) provisions governing the location of sexually oriented businesses (§ 12); and (3) provisions governing the substantive operation of such businesses (§§ 13–15).

On March 16, 1998, this Court entered an order preliminarily enjoining the City of Brunswick, Ohio from enforcing Ordinance 150–96. This order allowed the opening and operation of Tiffany's Cabaret, a liquor establishment featuring female topless dancers, in Brunswick. On June 1, 1998, the Court permanently enjoined the City of Brunswick from enforcing the licensing and location provisions of the Ordinance due to their unconstitutionality. At a hearing held on June 17, 1998, this Court heard testimony and oral argument concerning the constitutionality of the substantive operation provisions of Ordinance 150–96 (§§ 13–15) and newly-enacted Ordinance 67–98 (§§ 17–19), an emergency ordinance amending Ordinance 150–96.[1] Subsequent to the hearing, the parties were given until July 22, 1998 to file simultaneous briefs discussing the validity of the substantive operation provisions. The parties then had until July 27, 1998 to file response briefs. The plaintiffs filed a timely post-hearing brief. The defendants have not filed a post-hearing brief, nor have they responded to the plaintiffs' brief.

This Court finds that it is unnecessary to determine the constitutionality of the substantive operation provisions of Brunswick Ordinance 150–96 or Brunswick Ordinance 67–98 because both ordinances are null and void due to the fact that they were passed contrary to the procedural requirements of the Brunswick Charter. This Court also permanently enjoins the enforcement of Brunswick Cod.Ord. § 612.12 because it is facially overbroad in violation of the First Amendment to the United States Constitution.

---

1. Ordinance 67–98 attempts, among other things, to correct the constitutional flaws found in Ordinance 150–96. Although Ordinance 67–98 is labeled as "amending Ordinance 150–96", the new ordinance appears to replace Ordinance 150–96 in its entirety. The plaintiffs have challenged the new ordinance in their fourth amended complaint.

I. Brunswick's Sexually Oriented Businesses Ordinances Were Passed Contrary to Brunswick's Charter.

As held by the Ohio Supreme Court:

The municipal charter is basically the constitution of the municipality.... If the members of a legislative body can ignore with impunity, the mandates of a constitution or a city charter, then it is certain that the faith of the people in constitutional government will be undermined and eventually eroded completely.

*Cleveland ex rel. Neelon v. Locher,* 25 Ohio St.2d 49, 266 N.E.2d 831, 833–834 (1971). *See also Reed v. City of Youngstown,* 173 Ohio St. 265, 181 N.E.2d 700, ¶ 2 of syllabus (1961) ("No ordinance can conflict with the provisions of a city charter and be effective.").

The plaintiffs argue that both Ordinance 150–96 and 67–98 are null and void because they were enacted in a manner that violated Brunswick's Charter. The plaintiffs state that Ordinance 67–98, as an emergency ordinance, is void for two reasons. First, the subject matter of the new ordinance renders it incapable of being passed as an emergency ordinance because it pertains to the zoning and building codes. Second, even if Ordinance 67–98 could have properly been enacted as an emergency ordinance, it fails to comply with the Charter because it neither declares an emergency nor specifies and describes the alleged emergency. The plaintiffs further argue that even if Ordinance 67–98 is viewed as a non-emergency measure, it is nevertheless void (as is Ordinance 150–96) because it was read only one time prior to being enacted into law. Brunswick's Charter requires all non-emergency ordinances to be read three times prior to enactment. Although this Court commends the Brunswick City Council for its efforts to enact a sexually oriented business statute that passes constitutional · muster, the Court finds that the Council, perhaps in its haste, failed to follow the mandatory procedures set forth in the Brunswick Charter for the enactment of city ordinances.

*A. Ordinance 67–98 Is Incapable of Being Enacted as an Emergency Ordinance Because of the Subject Matter of the Law.*

Section 3.16 of the Brunswick Charter specifies which city ordinances may not be passed as emergency measures. Section 3.16 reads in relevant part: "Ordinances appropriating money may be passed as emergency measures, but no measure ... (b) which pertains to the Zoning Code or the Building Code ... shall ever be so passed by emergency measures." Ordinance 67–98, like Ordinance 150–96, clearly "pertains to the Zoning Code and Building Code". Specifically, section 12 of both ordinances expressly state that sexually oriented businesses are prohibited "in any zoning district other than in a zoning district where entertainment is permitted, as defined and described in the Brunswick Zoning Code." Further, § 5 of both ordinances also require an applicant for a sexually oriented business to receive the approval of "the building official as being in compliance with applicable laws and ordinances." Because the subject matter of Ordinance 67–98 pertains to the zoning and building codes, it cannot be properly passed as an emergency ordinance under the Brunswick Charter.

*B. Ordinance 67–98 Fails to Declare an Emergency and to Clearly Describe the Emergency.*

Even if the subject matter of Ordinance 67–98 did not prohibit it from being enacted as an emergency measure, Ordinance 67–98 still cannot qualify as an emergency ordinance. Section 3.16 of the Brunswick Charter requires the following: "An emergency ordinance shall be introduced in the form and manner prescribed for ordinances generally, except that it shall be plainly designated as an emergency ordinance and shall contain, after the enacting clause, a declaration stating that an emergency exists and describing it in clear and specific terms." Ordinance 67–98 fails to declare an emergency and fails to clearly describe the emergency. Such a failure renders Ordinance 67–98 invalid as an emergency ordinance. *See Youngstown v. Aiello,* 156 Ohio St. 32, 100 N.E.2d 62, ¶ 2 of

syllabus (Ohio 1951) (duty to set forth reasons for emergency in ordinance is mandatory and failure to do so will prevent ordinance from taking effect); *State ex rel. Emrick v. Wasson*, 62 Ohio App.3d 498, 576 N.E.2d 814 (1990) (same).

### C. Ordinances 67–98 and 150–96. Even as Non–Emergency Measures, Are Both Null and Void.

Even if Ordinance 67–98 is treated as a non-emergency measure, it is nevertheless void, as is Ordinance 150–96, because both ordinances were read only one time prior to their enactment, contrary to the procedural requirements of the Brunswick Charter. Based upon the evidence before it, this Court finds that the Charter requires all ordinances, except emergency measures, to be read three times before being enacted into law.

Section 3.15 of the Brunswick Charter appears to make the reading of a proposed ordinance permissive. Section 3.15 reads in relevant part: "Every proposed ordinance shall be introduced in writing in the form required for final adoption and may be read in full at first reading and may be read by title only in second and third readings." However, the next section of the Charter makes clear that § 3.15 *requires* three readings of all proposed ordinances, except emergency ordinances: "An emergency measure may be passed after the first reading only if six (6) of the members of Council vote to suspend the rules requiring three separate readings, otherwise the *provisions of Section 3.15 herein requiring three separate readings* shall prevail." Brunswick Charter § 3.16 (emphasis added).

In a previously filed brief, the Law Director for the City of Brunswick and the Brunswick defendants' counsel, Tim Reid, argues that the Charter allows three readings, but does not require them. To support his argument, Reid filed an affidavit in which he states that "the Charter previously provided that each Ordinance *shall* be read in full. The voters changed the language which permits the . Council to read or not read the Ordinance in full." Reid Affid. at ¶ 1. However, Reid then goes on to seemingly contradict himself by stating that "the home-rule provisions of the Brunswick City Charter allow Council to suspend the rules and to pass legislation after first reading." *Id.* at ¶¶ 2. Reid also states that the Charter rules were suspended with respect to Ordinance 150–96, and that "the effect of the suspension of the rules was that the Council suspended the rules as to three separate readings, and passed the legislation on first reading." *Id.* at ¶ 3–4. These statements suggest that, absent a suspension of the Charter's reading requirements by Council, the Charter requires not only one reading, but three readings of a proposed ordinance prior to its passage.

Reid has not specified which provisions of the Brunswick Charter constitute the "home-rule provisions" allegedly authorizing City Council to suspend the Charter rule requiring three readings of non-emergency ordinances prior to their passage. This Court could not find any such Charter provisions upon its own reading of the Charter. The only Charter provision allowing City Council to suspend the reading requirements relates to emergency measures. *See* Brunswick Charter § 3.16. As previously discussed, neither Ordinance 150–96 nor Ordinance 67–98 qualify as emergency measures.

Brunswick City Council may not suspend the "rules" of its Charter any more than Congress can suspend the "rules" of the Constitution. Therefore, because neither Ordinance 67–98 nor Ordinance 150–96 was passed according to the procedure required by the Brunswick Charter, both ordinances are null and void.

### II. Brunswick Cod.Ord. § 612.12 Is Facially Overbroad.

On June 15, 1998, this Court held that Ohio Administrative Code § 4301:1–1–52 ("Rule 52") was facially overbroad in violation of the First Amendment to the United States Constitution, and permanently enjoined its enforcement. Brunswick Cod.Ord. § 612.12 basically mirrors the language of Rule 52. Therefore, for the same reasons set forth in this Court's order of June 15, 1998, this Court permanently enjoins the enforcement of Brunswick Cod.Ord. § 612.12.

### III. Conclusion

For the foregoing reasons, this Court finds that Brunswick Ordinance 150–96 and Brunswick Ordinance 67–98 were enacted contrary to the procedural requirements of the Brunswick Charter and, therefore, are null and void. Further, this Court finds that Brunswick Cod.Ord. § 612.12 is facially overbroad in violation of the First Amendment, and permanently enjoins its enforcement.

The plaintiffs are hereby ordered to file, within twenty days of the date of this order, a brief outlining and justifying their alleged damages. The defendants shall have ten days thereafter to file a response, to which the plaintiffs shall have five days to reply. After the Court has reviewed the briefs, the Court will schedule a damages hearing if necessary.

IT IS SO ORDERED.