OPINION
This is a timely appeal from a decision by the Belmont County Court of Common Pleas granting summary judgment in favor of Michael Materkowski, et al., representing members of the Bellaire Village Council ("Appellees"), and against an intervening committee of referendum petitioners ("Appellant") and the Belmont County Board of Elections. In so doing, the court held that Appellees enacted an emergency ordinance in compliance with R.C. § 731.30, rendering the ordinance insulated from referendum vote in the November 6, 2002, general election. Appellant asks this Court to decide whether the ordinance in question sufficiently stated the basis for the emergency as required under R.C. § 731.30. Because we find the language used in the ordinance sufficient to explain the basis for the emergency as a matter of law, this Court hereby affirms the trial court's decision to grant summary judgment.
Bellaire, Ohio, was recently decertified from a city to a village. Consequently, Appellees decided to establish the position of Village Administrator to run the day-to-day operations of the village in conjunction with a previously established Board of Trustees. The Village Solicitor drafted ordinance No. 2002-06, entitled, "AN ORDINANCE ESTABLISHING THE POSITION OF VILLAGE ADMINISTRATOR AND DECLARING AN EMERGENCY." A draft of that document was first introduced at the Appellees' January 17, 2002 meeting.
The emergency ordinance creates the position of Village Administrator, describes generally the duties attendant that position and provides for the immediate appointment of an Acting Village Administrator pending the appointment of a permanent replacement by the Mayor. (Ordinance No. 2002-06). The last paragraph of the ordinance states,
"That this Ordinance is declared to be an emergency measure necessary for the immediate preservation of the public peace, health, safety and welfare, due to the fact that it establishes the position of a necessary employee and that this Ordinance must take effect and be in force from and after its approval by the Mayor." (Ordinance No. 2002-06, Section 8).
The ordinance was first read at the January 17, 2002, meeting and two subsequent meetings. At each of these three meetings, Appellees discussed the proposed ordinance and allowed residents to comment. Ultimately, the ordinance passed by a two-thirds majority. That same day, the mayor of the Village of Bellaire approved the ordinance with his signature.
Appellants subsequently petitioned the Board of Elections to have the ordinance put to a referendum vote in the 2002 general election. Appellees filed a complaint for declaratory and injunctive relief seeking to prevent the referendum vote. Appellees then moved for summary judgment arguing that the ordinance was a valid emergency measure passed in accordance with law and was, therefore, not subject to a referendum. Appellants countered by arguing that the ordinance failed to sufficiently set forth a reason for the emergency as required by R.C. § 731.30. Thus, the ordinance was subject to a referendum vote. The trial court granted Appellees' motion for summary judgment, finding the ordinance met the established requisites for the passage of emergency legislation.
In their sole assignment of error, Appellants contend the following:
"The Trial Court erred in holding that Ordinance No. 2002-06 complied with R.C. § 731.30 and granting Summary Judgment in favor of Plaintiffs-Appellees."
This Court subjects a trial court decision in summary judgment to de novo review. Parenti v. Goodyear Tire Rubber Co. (1990),66 Ohio App.3d 826, 829, 586 N.E.2d 1121; and Doe v. Shaffer (2000),90 Ohio St.3d 388, 390, 738 N.E.2d 1243. In this case, our review must also presume that the enactments of municipal legislative bodies are valid unless the record manifestly demonstrates that, "the legislative authority has exceeded its powers, or the legislation bears no reasonable relation to the public health, safety, welfare, or morals."State ex rel. Waldick v. Williams (1995), 74 Ohio St.3d 192, 193,658 N.E.2d 241.
Under Civ.R. 56, a matter is properly resolved on summary judgment when the moving party demonstrates that, viewing the evidence most strongly in favor of the non-movant, reasonable minds must conclude no genuine issue as to any material fact remains to be litigated and the moving party is entitled to judgment as a matter of law. Id. "[T]he moving party bears the initial responsibility of informing the trial court of the basis for motion, and identifying those portions of the record which demonstrate the absence of a genuine issue of fact or material element of the nonmoving party's claim." Drescher v. Burt (1996), 75 Ohio St.3d 280,296, 662 N.E.2d 264. The non-moving party has the reciprocal burden of specificity and cannot rest on mere allegations or denials in the pleadings. Id. at 293.
Generally, residents of a municipality have a constitutional right to subject the ordinances of that municipality to a referendum vote. Section1f, Article II of the Ohio Constitution; Taylor v. London (2000),88 Ohio St.3d 137, 143, 723 N.E.2d 1089. Nevertheless, under limited circumstances a municipality can enact emergency legislation that is insulated from referendum. R.C. § 731.30 dictates the scope of such legislation and provides that legislative bodies may,
"[E]nact emergency ordinances or measures necessary for the immediate preservation of the public peace, health, or safety in such municipal corporation, [which] shall go into immediate effect. Such emergency ordinances or measures must, upon a yea and nay vote, receive a two-thirds vote of all the members elected to the legislative authority, and the reasons for such necessity shall be set forth in one section of the ordinance or other measure."
An emergency measure that conforms to the requirements of R.C. §731.20 cannot be challenged by referendum. Emergency measures seek to address potentially harmful situations requiring a prompt response. A referendum, therefore, is an ill-suited device for challenging such measures. The more appropriate means for challenging the wisdom or desirability of an emergency measure is the subsequent election where voters can voice their displeasure through the ballot. State, ex rel.Emrick v. Wasson (1990), 62 Ohio App.3d 498, 503, 576 N.E.2d 814.
The duty and responsibility for determining the existence of and the reasons for an emergency is vested solely in the municipal legislature.Jurcisin v. Cuyahoga Cty. Bd. of Elections (1988), 35 Ohio St.3d 137,519 N.E.2d 347, paragraph three of the syllabus; City of Youngstown v.Aiello (1951), 156 Ohio St. 32, 36, 100 N.E.2d 62; Emrick at 504. Such decisions are not subject to judicial review. Id. Instead, this Court's role is limited to ascertaining whether the enacting process was adequate and proper and whether the municipal legislature complied with the statutory requirements for enacting emergency municipal legislation.Aiello at 37; Cincinnati v. Hillenbrand (1921), 103 Ohio St. 286,133 N.E. 556.
"Our role is not to second-guess the municipal legislature's determination that an emergency exists. Rather, our role is to secure conscientious compliance with the process mandated for enacting emergency measures. The focus of our examination is whether the municipal legislature complied fully with state law and the provisions of its own charter." Emrick at 504. As noted by the Ohio Supreme Court, if the voters do not agree with their representatives on either the existence of an emergency or the reasons for that emergency, they have, "an opportunity to take appropriate action in the subsequent election of their representatives." Taylor at 138, footnote 3, quoting State ex rel.Fostoria v. King (1950), 154 Ohio St. 213, 221, 94 N.E.2d 697.
Nevertheless, because a subsequent election is the only way the voters may express their disagreement with the enactment of emergency legislation with their elected representatives, municipalities must strictly adhere to the provisions set forth under R.C. § 731.30.Emrick at 505. This ensures the legislature fully considered the issue prior to declaring the emergency and relevant information is given to the general public. Id. Thus, the duty to set forth the basis for the emergency within the ordinance itself is mandatory. State ex rel. Moorev. Abrams (1991), 62 Ohio St.3d 130, 132-133, 580 N.E.2d 11.
Accordingly, R.C. § 731.30 requires municipal legislatures to set forth the emergency measure and the basis therefore with some specificity. Such bodies may not enact such measures using reasons that are conclusory, illusory, or tautological. State ex rel. Waldick v.Williams (1995), 74 Ohio St.3d 192, 195, 658 N.E.2d 241; Moore; Huebnerv. Miles (1993), 92 Ohio App.3d 493, 497, 636 N.E.2d 348; Walsh v.Cincinnati City Council (1977), 54 Ohio App.2d 107, 111, 375 N.E.2d 811. Reasons that are general, repetitious, or circular do not meet the requirements of R.C. § 731.30. City of Cincinnati ex rel. Newberryv. Brush (Jan. 11, 1984), 1st Dist. No. C-830674; State ex rel. Luff v.Sommer (July 30, 1981), 9th Dist. No. 10169. The existence of such legislation would frustrate the purpose behind the requirements of R.C. § 731.30 because it would lack the information voters need when determining whether they should re-elect those representatives responsible for enacting the legislation.
In Luff, supra, for example, the court noted that,
"[T]o allow Council merely to parrot a generalized, conclusory phrase which could be applied to virtually any ordinance sought to be enacted, and doing this without requiring Council to specify the reasons why this particular ordinance is itself of an emergency nature, would in effect be permitting Council to deprive the electorate of their constitutional and statutory right to have a referendum vote on a matter of widespread public concern." Luff at 2.
Holding municipalities to these standards ensures a municipal legislature provides the public with important information about the circumstances leading to the emergency measure. Emrick at 504. "Such information may be highly pertinent in future decisions at the ballot box." Id. Only when such information is within the ordinance itself can we be sure the public as a whole, and not just those present at the meetings, knows why their elected representatives thought an emergency existed at the time the emergency measure was enacted.
Thus, the caselaw developed on this question requires that the populace effected by the particular legislation must be put on notice as to the reason or reasons a particular piece of legislation must become effective immediately upon passage. Again, we must recognize that whether or not the voters or the courts like the reasons given and whether or not the voters or the courts agree with these reasons is immaterial. Further, while the legislation is referred to as "emergency legislation" this title is given not because there is necessarily some true emergency to be corrected or addressed as we may commonly construe the word "emergency." Rather, this designation is given to any piece of legislation the enacting body decides, whatever its reasons, must take immediate effect upon passage.
In the instant case, the trial court concluded that as a matter of law the ordinance complied with the requirements of R.C. § 731.30, and, thereby constituted valid and binding emergency legislation not subject to review by referendum. An examination of that ordinance reflects that Appellees sought the immediate, emergency appointment of a Village Administrator. Under R.C. § 735.273, a village administrator manages, conducts and controls essential utilities for the municipality. In other words, the Village of Bellaire requires a village administrator immediately or valuable village services will be jeopardized. The trial court found nothing ambiguous, tautological, or illusory in Appellees' explanation of the emergency nature of such a measure. This Court cannot help but agree with that decision.
Appellants acknowledge that it is irrelevant whether we, or they, agree with council's reasonings, whether we, or they, agree that there is a valid necessity and admit that it is not for us, or Appellants, to decide whether there is, in fact, an emergency which would require the ordinance to take immediate effect. Despite these admissions, Appellants argue and would have us hold that the language found in the present ordinance constitutes nothing more than council's attempt to say that this is, "an emergency because it is an emergency, it is necessary because it is necessary," (Appellants' Brief, p. 7). We disagree with this characterization. Rather, council has set up the duties and responsibilities of the administrator and then has said that it is imperative to have this position immediately created. It matters little to this analysis that a governing body is already in place, and so the legislation is not truly caused by an "emergency." Council has said, in effect, that it is an emergency because it is immediately necessary. Both appellants and the dissent would like to determine whether or not an "emergency" existed. That approach, however, is improper.
A reading of the entire document adequately puts the public on notice as to council's reasons for enacting this ordinance as an emergency. The fact that council could have been more articulate does not, of itself, deprive the ordinance of its validity or its emergency status. Hvebnerv. Miles (1993), 92 Ohio App.3d 493, 497; Walsh v. Cincinnati CityCouncil (1977), 54 Ohio App.2d 107, 111. We must look to the entire document in reaching our decision. Gillespie v. Village of Crooksville
(May 9, 1995), 5th Dist. No. CA-482. Once we review the entire ordinance before us we are forced to conclude that the document sufficiently puts the public on notice of the reasons for immediate enactment.
Consequently, the judgment of the Belmont County Court of Common Pleas granting summary judgment in favor of Appellees is hereby affirmed.
Donofrio, J., concurs.
DeGenaro, J., dissents; see dissenting opinion.